Lucio **RODRIGUEZ,** Appellant,

v.

**MARTIN LANDSCAPING,**
et al., Appellees.

No. 01–94–00292–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 25, 1994.

Bernard Bolanos, Houston, for appellant.

Charles Stanton Perry, Houston, for appellees.

Before ANDELL, DUGGAN and HEDGES, JJ.

## OPINION

ANDELL, Justice.

This is an appeal from a take-nothing summary judgment granted in favor of Martin Landscape Management, Inc. (MLM) and Tommy Fleeman, appellees, and against Lucio Rodriguez, appellant, based on MLM's statutory immunity under the Texas Workers Compensation Act.[1] In a sole point of error, Rodriguez contends there were unresolved fact issues about his employment status concerning (1) whether MLM was a worker's compensation subscriber at the time of the accident, and (2) whether he had received notice that MLM was a worker's compensation subscriber. We affirm.

### Facts and Procedural History

Rodriguez worked for Staftex, Inc., an employment services company, and was assigned to a job with MLM. While on that job, he was injured in a vehicle accident on a Houston freeway on June 4, 1991. Rodri-

guez was riding in the bed of a pick-up truck pulling a trailer and driven by coworker Fleeman.[2] Rodriguez alleged that Fleeman lost control of the vehicle and that the truck and trailer hit the guard rail twice, injuring Rodriguez's lower back.[3] Rodriguez received workers compensation benefits from Staftex.

Rodriguez later filed this common-law negligence claim against both MLM and Fleeman. In their motion for summary judgment, MLM and Fleeman asserted that the claim was barred by the "borrowed servant" doctrine. MLM and Fleeman contended that Rodriguez was MLM's borrowed servant under the contract with Staftex, and that the compensation benefits Rodriguez had already received discharged MLM from liability to Rodriguez. Therefore, MLM and Fleeman concluded that they were entitled to statutory immunity under the Texas Worker's Compensation Act. *See, e.g., Sparger v. Worley Hosp., Inc.,* 547 S.W.2d 582, 583 (Tex.1977) (recognizing that the "borrowed servant" doctrine protects the employer who has the right of control over the details of employee's work).

In his response, Rodriguez attached a counter-affidavit to controvert MLM's proof, in which he asserted the following:

My initial contract was with Stafftex [sic], Inc. In turn, Stafftex [sic], Inc. contracted with MARTIN LANDSCAPE MANAGEMENT, INC.

. . . .

I began to receive workers compensation benefits through Stafftex [sic] [,] Inc.'s carrier, Houston General Insurance Company. My medical bills were paid by Stafftex [sic], Inc. through their carrier, Houston General Insurance Company.

. . . .

I never received benefits from MARTIN LANDSCAPE MANAGEMENT, INC. via a policy of Texas Workers Compensation

1. Tex.Rev.Civ.Stat.Ann. art. 8308–4.01, Act of December 13, 1989, 71st Leg., 2nd C.S., ch. 1, § 4.01, 1989 Tex.Gen.Laws 1, 32, *repealed by* Act of September 1, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex.Gen.Laws 987, 1132–32 (current version at Tex Lab.Code Ann. § 401.001–417.004 (Vernon Pamph.1994)).

2. Like Rodriguez, Fleeman was an employee of Staftex, working for MLM.

3. Specifically, according to the doctor's report on Rodriguez's Magnetic Resonance Imaging (MRI), Rodriguez received three bulged discs at L2–L3, L4–L5 and L5–S1.

insurance purchased by MARTIN LAND-SCAPE MANAGEMENT, INC.. I never received notice from MARTIN LAND-SCAPE MANAGEMENT INC. that I was covered by any Workers Compensation insurance policy. I never received written notice from MARTIN LANDSCAPE MANAGEMENT, INC., nor was notice posted at the job site, that I was covered by any Workers Compensation insurance policy of MARTIN LANDSCAPE MANAGEMENT, INC.

Rodriguez contends that his controverting affidavit raised material fact issues about whether he worked for MLM or Staftex and whether his workers compensation benefits were from MLM or from Staftex. He also complains that, if MLM was in fact a workers compensation subscriber, he received no notice to that effect.

### Standard of Review

■ Summary judgment is proper only when the movant shows that there is no genuine issue of material fact and has proven its entitlement to judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985); TEX.R.CIV.P. 166a(c). By moving for summary judgment on the basis of the borrowed servant doctrine, MLM assumed the burden of showing that, as a matter of law, Rodriguez was a borrowed servant and that the doctrine applied to bar this claim.

### Rodriguez was a Borrowed Servant

■ The borrowed servant doctrine applies in situations where an employee of one employer, the general employer, works temporarily for another employer, the special employer. The doctrine makes the special employer the "employer" during the temporary term of employment.

■ The contract between Staftex and MLM expressly granted to MLM the right to control Rodriguez, and thereby established that the borrowed servant doctrine applied to Rodriguez as a matter of law. *Producers*

*Chem. Co. v. McKay*, 366 S.W.2d 220, 226 (Tex.1963); *Bucyrus–Erie Co. v. Fogle Equip. Corp.*, 712 S.W.2d 202, 204 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). It is uncontroverted that Rodriguez was a Staftex employee assigned to MLM.

A comparable situation arose in *Marshall v. Toys–R–Us Nytex, Inc.*, 825 S.W.2d 193, 197 (Tex.App.—Houston [14th Dist.] 1992, writ denied), where Marshall was an employee of a temporary employment agency, Labor Systems, Inc. *Id.* at 194. Labor Systems assigned Marshall to a temporary job with Toys–R–Us, and she was injured while working in the Toys–R–Us warehouse. Labor Systems, the temporary agency that had placed her, filed a workers compensation claim on Marshall's behalf, and Marshall proceeded with a common-law action against Toys–R–Us. *Id.* The trial court granted summary judgment for Toys–R–Us on its claim of statutory immunity under the Workers Compensation Act, and Marshall appealed. *Id.* at 195.

Marshall challenged the summary judgment on the following grounds: (1) there was a fact issue about whether she was an employee of Toys–R–Us or of Labor Systems at the time of the accident; (2) Toys–R–Us failed to prove that it was a workers compensation subscriber; and (3) she had no notice that Toys–R–Us was a workers compensation subscriber.[4] *Id.* Marshall failed to controvert the summary judgment evidence showing that she received her on-site instructions exclusively from Toys–R–Us, and that Labor Systems in no way controlled or directed her performance. The court concluded that Toys–R–Us had the right of control over Marshall at the time of the accident, and that the borrowed servant doctrine applied. *Id.* at 195–197.

Finally, the *Marshall* court held that when Labor Systems gave the statutorily-required notice of the claim to the Industrial Accident Board, this was constructive notice to Marshall that Toys–R–Us was a worker's compensation subscriber. The court overruled

---

**4.** Marshall also alleged that Toys–R–Us failed to plead statutory immunity in its answer. The appellate court correctly noted that pleading it in

the motion for summary judgment was sufficient. Rodriguez did not assert this; otherwise, the challenges are identical.

all of Marshall's contentions and affirmed the summary judgment.

### MLM was an "Employer" for purposes of the Workers Compensation Act

■ Rodriguez contends that MLM did not prove that it was an "employer" under the Worker's Compensation Act as it read at the time of the injury. He concedes, however, that he had received worker's compensation benefits through Staftex. Martin's affidavit claims that MLM was a worker's compensation subscriber at the time of Rodriguez's accident. The contract provides that MLM will pay fees to Staftex to cover worker's compensation premiums for assigned employees, such as Rodriguez. The relevant provision states:

> *Service Fee.* The Service Fee charged to SUBSCRIBER and payable at the end of each pay period will be equal to gross employee earnings multiplied by the service fee percentage shown on *Exhibit A, plus charges for worker's compensation insurance* and employee benefit programs.

(Emphasis added.)[5]

The "Exhibit A" to which this provision refers is the fee schedule, showing that MLM paid Staftex "actual" costs for worker's compensation insurance premiums. This was attached to the contract and included in the summary judgment evidence. This summary judgment evidence shows that MLM was a worker's compensation subscriber at the time of Rodriguez's accident. As such, it is protected by statute from common-law liability. *Sparger,* 547 S.W.2d at 583.

Rodriguez points to a change in the Workers Compensation Act, deleting the term "subscriber" from the newer version, and expanding the definition of the term "employer." The earlier version read:

> "Employer" shall mean any person, firm, partnership, association of persons or corporations or their legal representatives that makes contracts of hire.

> . . . .

> "Association" shall mean [an] . . . insurance company authorized under this Act to insure the payment of compensation to injured employees or to the beneficiaries of deceased employees.

> *"Subscriber"* shall mean any employer who has become a member of the association *by paying the required premium.* . . .

TEX.REV.CIV.STAT.ANN. art. 8309 (Vernon 1967), (emphasis added).[6]

At the time Rodriguez's injury occurred, the corresponding section of the Act read:

> (19) *"Employer"* means, unless otherwise specified, a person that makes a contract of hire, that employs one or more employees, *and that has workers' compensation insurance coverage.* The term includes a governmental entity that self-insures, either individually or collectively.

> . . . .

> (48) "Workers' compensation insurance coverage" means an approved insurance policy to secure the payment of compensation, coverage to secure the payment of compensation through self-insurance as provided by this Act, or coverage provided by a governmental entity to secure the payment of compensation.

TEX.REV.CIV.STAT.ANN. art. 8308–1.03 (emphasis added).[7]

■ Rodriguez argues that the deletion of the term "subscriber" coupled with the expanded definition of "employer" constitutes a substantive change. He contends that MLM failed to prove that it was an "employer" under the Act as it read at the time of the injury. We disagree. The deletion of the term "subscriber" is a distinction without a difference. The same substantive requirement is incorporated in the newer version's

---

5. As we observed in footnote 3, the term "subscriber" in this contract refers to MLM as a client of Staftex, not to MLM as a subscriber under the Worker's Compensation Act. This very paragraph of the contract, along with the attachment to which it refers, does, however, show that MLM is a subscriber under the Act.

6. *Repealed by* Act of Dec. 13, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(15), 1989 Tex.Gen.Laws 1, 114.

7. *Repealed by* Act of September 1, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex.Gen.Laws 987, 1132–32 (current version at TEX.LAB.CODE ANN. § 401.011 (18), (44) (Vernon Pamph.1994)).

606

definition of "employer." MLM satisfied this statutory requirement by paying to Staftex the actual cost of the workers' compensation premiums for Rodriguez. MLM was, therefore, Rodriguez's employer for purposes of the Workers Compensation Act.

### Rodriguez had Notice that MLM had provided Workers Compensation Coverage

 Rodriguez next argues that summary judgment was improper because there was a fact issue concerning whether he had notice that MLM had workers compensation coverage. He contends that he should be allowed to bring his common-law claim. He relies on *Brown Serv., Inc. v. Fairbrother,* 776 S.W.2d 772 (Tex.App.—Corpus Christi 1989, writ denied), where an employer's failure to give pre-injury notice of workers' compensation coverage barred the employer from claiming protection under the Act. In *Brown Serv.,* however, there is no indication that the injured worker had received the statutory benefits. Rodriguez admitted to receiving workers' compensation benefits from Staftex, his general employer. He claims that he should also be allowed to recover common-law negligence damages from his special employer, MLM, *even though MLM paid for the workers' compensation benefits he had already received.*

The fact that Rodriguez received workers compensation benefits from Staftex proves as a matter of law that he had constructive notice, *prior to the injury,* that he was covered by a workers compensation insurance policy. *See Marshall,* 825 S.W.2d at 197 (general employer's filing of statutory notice with Industrial Accident Board held to constitute constructive notice that borrowing employer was a workers compensation subscriber). MLM's payment of premiums for Rodriguez's coverage brought MLM under statutory immunity as a workers' compensation employer.

### Conclusion

This case is controlled by *Marshall.* The contract between Toys–R–Us and Labor Systems provided that the cost of the workers compensation premiums, which Labor Systems paid to the carrier, was included in the fees paid by Toys–R–Us. The court held that this made Toys–R–Us a subscriber within the meaning of the Workers Compensation Act. 825 S.W.2d at 197. An identical situation exists in the present case, and the only difference Rodriguez claims is the omission of the word "subscriber" in the statute, coupled with the expanded definition of the word "employer." We have already concluded that the statutory change upon which Rodriguez relies is a distinction without a difference. Rodriguez fails in his attempt to distinguish *Marshall.*

We overrule appellant's sole point of error, and affirm the judgment of the trial court.