Keith WHITE and Paula White, Individually, and as Parents and Natural Guardians of Brandi White, a minor, Appellants,

v.

LIBERTY EYLAU INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 06–95–00057–CV.

Court of Appeals of Texas, Texarkana.

Argued March 26, 1996.

Decided April 2, 1996.

Rehearing Overruled April 2, 1996.

Phillip J. Duncan, Duncan & Rainwater, Little Rock, AR, Nick Patton, Texarkana, for Appellants.

John R. Mercy, Atchley, Russell, Waldrop, Texarkana, for Appellee.

Kelly B. Tidwell, Texarkana, for Guardian Ad Litem.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Keith and Paula White appeal a take-nothing judgment entered following a jury trial in their personal injury suit against Liberty Eylau Independent School District. The Whites challenge the trial court's submission of certain jury instructions and definitions, as well as the court's failure to submit alternative instructions they requested. They also attack the legal and factual sufficiency of the evidence supporting the jury's verdict. Although we conclude that the trial court erred in instructing the jury, we hold that the error does not warrant reversal and affirm the judgment.

On April 1, 1991, Keith and Paula White's car was struck by a school bus carrying students of Liberty Eylau Independent School District. The driver of the bus, Dorothy Brantley, was employed by the Bowie County Schools Transportation Department and was also a sixth-grade teacher with the school district. Keith and Paula White were both injured in the accident. In addition, the accident caused Paula, who was six months pregnant, to begin premature labor. Later that day, she gave birth by Caesarean section to Brandi White, who also sustained injuries in the accident.

The Whites sued Brantley, Bowie County Schools Transportation Department, and Liberty Eylau Independent School District. After jury selection, but before opening statements, the Whites settled with Brantley and the transportation department. The court then granted the school district's motion for summary judgment on the ground that Brantley was not acting within the scope of her employment as an employee of the school district at the time of the accident. On appeal by the Whites, this court reversed, holding that the summary judgment evidence raised fact issues as to whether the school district and the transportation department jointly controlled the operation of the buses. *White v. Liberty Eylau Sch. Dist.*, 880 S.W.2d 156 (Tex.App.—Texarkana 1994, writ denied).

At trial on remand, the jury found that Brantley was not acting as an employee of the school district at the time of the accident, thereby absolving the school district of liability for the Whites' injuries. The Whites now challenge this finding.

The court submitted the following question and instructions to the jury:

On the occasion in question, was Dorothy Brantley acting as an employee of Liberty–Eylau Independent School District?

An "employee" is a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

To be an employee of Liberty–Eylau Independent School District, Dorothy Brantley must have been acting within the scope of her general authority at the time of the accident in furtherance of the district's business, and for the accomplishment of the object for which she was employed.

A person may be the servant of two employers at one time as to one act if the service to one does not involve an abandonment of the service to the other. The test of dual employment is whether both employers had the right to control and direct the employee's actions at the time of the accident.

The trial court is to submit such instructions and definitions as shall be proper to enable the jury to render a verdict. TEX.R.CIV.P. 277. However, the trial court has considerable discretion in determining the necessity and propriety of explanatory

instructions and definitions. *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 256 (Tex.1974); *Louisiana & Arkansas Ry. Co. v. Blakely,* 773 S.W.2d 595, 598 (Tex.App.—Texarkana 1989, writ denied). An instruction or definition given by the trial court is improper only if it misstates the law as applicable to the facts. *M.N. Dannenbaum, Inc. v. Brummerhop,* 840 S.W.2d 624, 631 (Tex.App.—Houston [14th Dist.] 1992, writ denied). The court may refuse to give a requested instruction that is not necessary to enable the jury to render a verdict, even if the instruction is a correct statement of the law. *Paschall v. Peevey,* 813 S.W.2d 710, 713–14 (Tex.App.—Austin 1991, writ denied); *Blakely,* 773 S.W.2d at 599.

■ The Whites contend that the court erred in submitting the definition of "employee" contained in the first sentence of the instructions. They argue that the reference in the definition to an independent contractor was improper, since neither party contended that Brantley was an independent contractor. They note that an interrogatory submitted by the jury to the court during deliberations asked for a definition of independent contractor. The Whites claim that this demonstrates that the jury was needlessly confused by this issue.

The definition contained in the challenged sentence was taken verbatim from the Texas Tort Claims Act, the statute under which this suit was brought. TEX.CIV.PRAC. & REM.CODE ANN. § 101.001(1) (Vernon 1986). The instruction was thus not an incorrect statement of the law, and the trial court did not abuse its discretion in submitting it to the jury.

■ The Whites also challenge the following jury instruction which preceded the questions in the court's charge:

> You are instructed that Liberty–Eylau Independent School District is a separate government entity from Bowie County Schools Transportation Department. Liberty–Eylau Independent School District entered into an interlocal contract with Bowie County Schools Transportation Department for transportation services. *A person acting under an interlocal contract does not, because of that action, hold more than one civil office of emolument or more than one office of honor, trust or profit.*

(Emphasis added.) The Whites objected to the final sentence of this paragraph as irrelevant and an improper statement of the law as applied to the facts of this case.

The language which the Whites challenge is taken verbatim from section 791.004 of the Interlocal Cooperation Act. TEX.GOV'T CODE ANN. § 791.004 (Vernon 1994). The enactment of this section was clearly motivated by article 16, section 40 of the Texas Constitution: "No person shall hold or exercise at the same time, more than one civil office of emolument...." TEX. CONST. art. XVI, § 40. By enacting section 791.004, the legislature, pursuant to authority given it by article 3, section 64(b) of the constitution, quite clearly intended merely to establish that a person acting in two or more official capacities pursuant to an interlocal contract does not violate article 16, section 40 of the constitution. TEX. CONST. art. III, § 64, art. XVI, § 40. Given the statute's clear purpose, it was improper for the trial court to include its language in the jury instructions. Whether Brantley, or any other person involved in the events surrounding this case, was unconstitutionally holding two public offices was not even remotely at issue. In light of the facts of the case, this instruction could have been taken by the jury to imply that Brantley could not legally have held more than one public office at a time, thereby precluding a finding that she was an employee of both the transportation department and the school district. The instruction given by the court was thus a misstatement of the law as applicable to the facts of this case. *See Brummerhop,* 840 S.W.2d at 631.

■ An error in the jury charge is reversible only if, in light of the entire record, it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1); *Reinhart v. Young,* 906 S.W.2d 471, 473 (Tex. 1995). The erroneous instruction given here appeared in the charge before, and on a separate page from, the question concerning Brantley's employment with the school district. Furthermore, as quoted above, the third paragraph of instructions and defini-

tions which directly accompanied the relevant question contained language explaining that it was possible for a person to be an employee of two employers at one time as to one act. This two-sentence instruction, which was requested by Brantley and which appeared immediately after the question, was sufficient to alleviate any prejudice caused by the previous erroneous instruction. Because this error in the jury charge probably did not cause the rendition of an improper judgment, it was not reversible error.

█ The Whites contend that the court erred in refusing to grant their request to submit to the jury the following instruction:

> If there is evidence when the accident occurred that there was joint control of the bus driver by Liberty–Eylau Independent School District and the Bowie County Transportation Department, then you may find that the bus driver is an employee of both.

This was one of three sentences in Brantley's requested instructions addressing the issue of dual employment. The court included in the charge the first two requested sentences on this issue, as set out above, but it refused to submit the third sentence, holding that it was duplicative of the other two. Since these other instructions, which were submitted to the jury at Brantley's request, commented directly and substantially on the issue of dual employment, the trial court did not abuse its discretion in failing to include the additional sentence.

█ The Whites maintain that the court also erred in refusing the following requested instruction:

> Although state funds from which drivers are paid are sent directly to the transportation department, if you find the school district has assigned its right to the funds to the department, you may find that Liberty Eylau paid the salary of the bus drivers transporting its students.

The Whites emphasize that the language of this requested instruction is essentially a restatement of a point made in this court's prior opinion reversing the summary judgment initially granted in this case. *White,* 880 S.W.2d at 160. While it may be true that the instruction is a correct statement of the law, the trial court is not required to give an instruction merely because it states correct legal principles. *Paschall,* 813 S.W.2d at 713–14; *Blakely,* 773 S.W.2d at 599. The trial court could have determined the issue addressed by the instruction to be an evidentiary and not an ultimate issue in the case. Its refusal of the instruction thus was not an abuse of discretion.[1]

█ The Whites contend that the evidence establishes as a matter of law that Brantley was an employee of the school district at the time of the accident. The Whites preserved this legal insufficiency point of error by moving for a directed verdict on this issue. *See Cecil v. Smith,* 804 S.W.2d 509, 510–11 (Tex.1991). They also contend that the jury's finding that Brantley was not an employee of the school district is against the great weight and preponderance of the evidence, a factual insufficiency point.

█ In reviewing an appellant's claim that the evidence is legally insufficient, we examine the record for any evidence that supports the finding, and overrule the point of error if any such evidence exists. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). By contrast, in reviewing a claim that the evidence is factually insufficient, we examine the entire record to determine if the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). The fact that a point of error challenges a jury's failure to find, rather than a finding, does not

---

1. The Whites also challenge the following instruction given as part of the court's charge:
 When words are used in this charge in a sense which varies from the meaning which is commonly understood, you are given a proper legal definition which you are bound to accept in place of any other definition or meaning. In other words, where a term is defined, you are bound by that definition. If it's not defined, then that term has its commonly-understood meaning.

 This instruction was not a misstatement of the applicable law, and the court therefore did not err in giving it. *See Green Tree Acceptance, Inc. v. Combs,* 745 S.W.2d 87, 89 (Tex.App.—San Antonio 1988, writ denied).

alter either of these standards of review. *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 649–51 (Tex.1988).

 The Texas Tort Claims Act makes a governmental unit liable for personal injuries caused by the wrongful act or omission or negligence of an employee acting within the scope of his employment. TEX. CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986). The act defines "employee" as:

> [A] person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.001(1). A person may be the servant of two employers at one time as to one act if the service to one does not involve an abandonment of the service to the other. RESTATEMENT (SECOND) OF AGENCY § 226 (1958). To be an employee, a person must be under the control and direction of the alleged employer. *White,* 880 S.W.2d at 159.

 The jury answered "no" to the following question: "On the occasion in question, was Dorothy Brantley acting as an employee of Liberty–Eylau Independent School District?" The evidence showed that Liberty Eylau Independent School District joined with twelve other school districts to create the Bowie County Schools Transportation Department. The transportation department's board of directors consists of the superintendents of each of the participating school districts. The state of Texas appropriates funds to all school districts for student transportation purposes according to a formula which takes into account the number of students in the district and the mileage of the bus routes. The thirteen districts that participate in the Bowie County Schools Transportation Department combine their state appropriations to fund the department's services.

Paul Huddleston, director of special services for the school district at the time of the accident, testified that he was a paid employee of the school district and was not an employee of the transportation department. Huddleston testified that in some respects he handled the day-to-day supervision of the buses used by the school district. He testified that when drivers could not report for work, they would call him, and he would assign a replacement from the substitute list. He testified that the substitute list was prepared by him and approved by Jim Norman, director of transportation for the transportation department. Huddleston testified that he interviewed all applicants for bus driver positions and then made recommendations for hiring to Norman. He also testified that, when necessary, he made recommendations to Norman for discharge of drivers and that his recommendations concerning hiring and firing were usually followed. Huddleston testified that teachers with the school district were encouraged to become school bus drivers if they wished. He testified that Norman was in charge of disciplining employees for their performance as drivers.

Huddleston further testified that he attended each board meeting of the Bowie County Schools Transportation Department. He testified that he was partially involved in setting the bus routes and, when necessary, made recommendations for route adjustments. He also testified that, when not in operation, the buses used by the school district were either parked at the school or taken home by their drivers. He testified that the buses were routinely fueled by a person under his supervision, at a gas pump located on Liberty Eylau school premises. He testified that this person was paid in part by the school district, but mostly by the transportation department. Finally, Huddleston testified that the school district used two kinds of buses. For regular school routes, it used buses owned by the transportation department, but for extracurricular activities, it primarily used other buses, which were owned by the school district. The same drivers would often drive for both regular school routes and for extracurricular trips, but for regular routes, the drivers were paid by the transportation department, while for extracurricular activities, they were paid separately and directly by the school district.

He testified that the accident in this case occurred on a regular route.

Norman testified that he currently serves as the transportation director of the Bowie County Schools Transportation Department and that he did so at the time of the accident. He testified that he controls the day-to-day operations of the regular bus routes in the participating school districts. He testified that he receives recommendations from the school districts for the hiring of drivers, but makes the final decisions himself. He testified that the transportation department board, composed of the superintendents of each participating district, does not involve itself in day-to-day operating details, but instead primarily sets broad policy for the department, leaving routine management tasks to his care. He testified that all changes in bus routes must be presented to him and that he provides each district with a list of approved substitute drivers.

Norman further testified that the transportation department's office is separate from the offices of any participating school district. He testified that the bus drivers on the regular routes are paid by the transportation department and that the department withholds taxes and conducts medical examinations and pre-employment driving and criminal record checks for each of its employees. Finally, Norman testified that he, not Paul Huddleston, was the immediate supervisor of the person who routinely fueled the school district's buses at the time of the accident.

In light of the contrasting testimony present in the record, the jury could reasonably have concluded that Brantley was not under the control and direction of the school district while driving her regular bus route. The jury's failure to find that Brantley was an employee of the school district at the time of the accident therefore was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

We hold that although the trial court erred in submitting the jury instruction concerning dual office-holding under an interlocal contract, this was not reversible error. We overrule all other points of error and affirm the judgment of the trial court.

GRANT, Justice, dissenting.

I believe that the erroneous jury instruction made a confusing issue more confusing to the jury. I would hold that this instruction was harmful error.