Edward Anthony HOFFMAN, Appellant,

v.

TRINITY INDUSTRIES, INC., Appellee

No. 09–98–040 CV.

Court of Appeals of Texas,
Beaumont.

Submitted Sept. 10, 1998.

Nov. 19, 1998.

Rehearing Overruled Dec. 17, 1998..

Kevin Dutton, Tonahill, Hile, Leister & Jacobellis, Jasper, for appellant.

Michael R. McGown, Weller, Green, McGown & Toups, Beaumont, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

This is an appeal of a summary judgment granted in favor of appellee Trinity Industries, Inc. ("Trinity") against appellant Edward Hoffman ("Hoffman"). The underlying case involves a negligence suit for personal injuries sustained by Hoffman while working on Trinity's premises.

Raising two issues, Hoffman claims the trial court erred in granting summary judgment in favor of Trinity. We review Hoffman's complaints under well known summary judgment standards. The movant must show (1) that there are no genuine issues of material fact and (2) that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). Summary judgment for a defendant is proper if the defendant disproves at least one element of each of the plaintiff's claims or establishes all elements of an affirmative defense to each claim. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). In determining whether there is a disputed fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Id.* Every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in his favor. *Id.*

Pursuant to a contract, Technical Resources, Inc. ("TRI"), a company which leases employees to other companies, sent Hoffman to work at the Trinity plant in Beaumont, Texas. During the course of his work at the plant, Hoffman sustained an injury. He filed a workers' compensation claim, and benefits were paid to him under TRI's policy. Subsequently, Hoffman sued Trinity for negligence.

The contract governing the relationship between TRI and Trinity contains the following provision:

Contractor [TRI] shall be an Independent Contractor with respect to all the services to be performed hereunder and neither Contractor [TRI] nor any of those employed in furnishing such services shall be deemed the agents, representatives, employees or servants of Owner [Trinity]. Contractor [TRI] shall have complete and sole control over its employees, the details of the services and methods by which the services are accomplished, it being understood that Owner [Trinity] is interested only in the results to be obtained by Contractor [TRI]. Owner [Trinity] shall at all times have the right to make such inspections of the Work as may be necessary to ensure such results.

Signed by the vice-president of Trinity and the president of TRI, the contract expressly provides that none of those employed by TRI to perform services for Trinity shall be deemed to be the employees of Trinity.

Trinity's motion for summary judgment relies on two grounds: the dual or joint employer theory and the borrowed servant doctrine. If either theory applies in the instant case, Hoffman would be considered Trinity's employee. That classification is significant, because, pursuant to TEX. LAB.CODE ANN. § 408.001(a) (Vernon 1996), the Texas Workers' Compensation Act is the exclusive remedy for an employee injured in the course and scope of his employment. *Nayef v. Arabian Am. Oil Co.*, 895 S.W.2d 825, 827 (Tex.App.—Corpus Christi 1995, no writ). If Hoffman is found to be Trinity's employee, Trinity would be exempt from common law

liability for negligence. *See Darensburg v. Tobey,* 887 S.W.2d 84 (Tex.App.—Dallas 1994, writ denied).

In Issue One Hoffman claims the trial court erred in granting summary judgment based on the joint or co-employment theory. Under that theory, as set out in RESTATEMENT (SECOND) OF AGENCY § 226 (1958), a person "may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other." Trinity contends its evidence demonstrates Hoffman was the servant of two masters—TRI and Trinity.

■ In addition to its reliance upon the Restatement for support of its co-employer theory, Trinity also directs us to *Brown v. Aztec Rig & Equip., Inc.,* 921 S.W.2d 835 (Tex.App.—Houston [14th Dist.] 1996, writ denied) wherein the court, as well as the Restatement, acknowledges the viability of the co-employment doctrine. What sets *Aztec* apart, however, is the presence of a contract which expressly provides that both Administaff (the employee-leasing company) and Aztec "will be considered co-employers (dual or joint employers) of those persons furnished to [Aztec] by Administaff for purposes of 'employer liability under workers' compensation laws.'" *Id.* at 838. In addition, Brown, the employee, also signed an agreement which stated that "for the purpose of workers' compensation coverage, he is an employee of both Administaff and [Aztec]." *Id.* The agreement further states that "in the event of any injury, Employee agrees that his sole remedy lies in coverage under Administaff's workers' compensation policy under the theory that Administaff and [Aztec] are co-employers." *Id.* Clearly, the contract in *Aztec* is distinguishable from the agreement before this Court. Here, the contract specifically provides that the employees of TRI will not be employees of Trinity and further states that TRI will control the details of the work.

Even though the joint or co-employment doctrine has been recognized in Texas by the Texarkana and Fourteenth Court of Appeals,[1] the doctrine cannot be the basis for summary judgment in the instant case. The express language of the contract herein raises a fact issue as to whether Hoffman was an employee of TRI alone, as provided by contract, or of TRI and Trinity jointly. Issue one is sustained.

In issue two Hoffman claims "the trial court erred in granting summary judgment under the theory of borrowed servant." Again, Hoffman's position is that the express contract language creates a fact issue as to whether he occupied that status.

■ Texas courts recognize that the general employee of one employer may become the special employee or "borrowed servant" of another employer. *Sparger v. Worley Hosp., Inc.* 547 S.W.2d 582, 583 (Tex. 1977). The "borrowed servant" doctrine is implicated when the nominal or general employer loans or supplies an employee to another, who is termed the special employer. *Rodriguez v. Martin Landscape Management, Inc.,* 882 S.W.2d 602, 604 (Tex.App.—Houston [1st Dist.] 1994, no writ). The issue of "right of control" is pivotal under the borrowed servant doctrine because the employer who has the right of control is exempted from common law liability. *Esquivel v. Mapelli Meat Packing Co.,* 932 S.W.2d 612, 614 (Tex.App.—San Antonio 1996, writ denied). The test for determining whether a person is the employee of the original employer or of the borrowing employer is whether the employee is subject to the specific direction and control of the loaning or the borrowing employer. *Id.*

■ In support of its contention regarding the borrowed servant doctrine, Trinity submits the affidavits of Dave Morris and Ken Lawson as summary judgment proof. Morris, the environmental manager at Trinity in January 1996, stated in his affidavit that all the details of Hoffman's work were directed and supervised by Trinity employees Clint Meynard and Nathan Richardson, and not by TRI. In addition, a Trinity employee ex-

---

1. *Ely v. General Motors Corp.,* 927 S.W.2d 774, 777 (Tex.App.—Texarkana 1996, writ denied); *White v. Liberty Eylau Indep. School Dist.,* 920 S.W.2d 809, 814 (Tex.App.—Texarkana 1996, writ denied); *Aztec,* 921 S.W.2d 835.

plained Trinity's general safety rules to Hoffman, and Hoffman reviewed other safety materials at a Trinity sponsored orientation. Furthermore, Morris declared that Trinity controlled Hoffman's hours and told him when to take breaks and when to take lunch. TRI never provided any guidance or supervisory personnel at Trinity. Morris further stated that at the time of the accident Trinity had its own workers' compensation insurance, as did TRI.

Appellant's responses to Trinity's request for admissions confirmed most of the details of Morris's affidavit. Hoffman admitted the work crew received work assignment and instructions from Trinity employees; TRI did not supervise, direct, or control the work crew once it was assigned to Trinity; Trinity scheduled the work and set his hours.

The unique feature of the instant case is the presence of a contract specifically providing (1) that workers like Hoffman shall not be deemed employees of Trinity and (2) that TRI will have "complete and sole control over its employees, the details of the services and methods by which the services are accomplished." The Texas Supreme Court has held that where there is such a contract between the general and special employer which resolves the question of the right of control, then the solution of the question is relatively simple. *Producers Chem. Co. v. McKay*, 366 S.W.2d 220 (Tex.1963). "[W]here there is a contract between the general and special employer which resolves the question of the employment status, then the factual consideration of the right to control the details of the work is unnecessary." *Missouri Pac. R.R. Co. v. Buenrostro*, 853 S.W.2d 66, 72 (Tex.App.—San Antonio 1993, writ denied) (quoting *Sanchez v. Leggett*, 463 S.W.2d 517 (Tex.Civ.App.—Corpus Christi 1971), *writ ref'd n.r.e.*, 468 S.W.2d 63 (Tex. 1971)); *Marshall v. Toys–R–Us Nytex, Inc.*, 825 S.W.2d 193, 196 (Tex.App.—Houston [14th Dist.] 1992, writ denied). In a later

Supreme Court case, however, the Court found such a contract, though a factor, is not controlling:

> In *Producer's Chemical [Co. v. McKay, 366 S.W.2d 220 (Tex.1963)]* we recognized that whether a general employee of one employer may, in a particular situation, become the borrowed servant of another employer is often a difficult question. *Id.* at 225. A contract between two employers providing that one shall have the right of control over certain employees is a factor to be considered, but it is not controlling. *Id.* at 226. This court has held that a contract will not prevent the existence of a master-servant relationship where the contract is "a mere sham or cloak designed to conceal the true legal relationship between the parties." *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex.1964); (citations omitted). Where the right of control prescribed or retained over an employee is a controverted issue, it is a proper function for the fact-finder to consider what the contract contemplated or whether it was even enforced. (citations omitted) Because the record in the present case is replete with evidence of Exxon's right of control over Perez, the court of appeals erred by concluding that the contract between the parties was conclusive.

*Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex.1992).[2]

The contract herein, though not controlling by virtue of *Perez*, is nevertheless a factor to be considered. An arms-length transaction between two business entities, the contract specifically places the control of the employee's work squarely in the hands of TRI.[3] If the contract did not exist, we would, of necessity, conclude the summary judgment was proper, because Trinity's summary judgment evidence demonstrates Trinity controlled the details of the work. However, the express language of the contract does exist; it specif-

---

**2.** Although we recognize *Perez* in its own right holds the contract is not controlling, we are puzzled at the Supreme Court's citation of *Producers Chemical* for that proposition. Our reading of *Producers Chemical* reveals no such holding.

**3.** Trinity contends the contract attached to Hoffman's response is not proper summary judgment evidence because it was not a product of discovery and is unauthenticated. However, that allegation is incorrect, because Trinity produced the contract in response to Hoffman's request for production. Tex.R. Civ. P. 166a(d).

ically provides that employees such as Hoffman shall not be the employees of Trinity and thereby raises a fact issue as to whether Hoffman was solely the employee of TRI or whether he was Trinity's borrowed servant. Issue two is sustained.

Having sustained both issues, we reverse the judgment and remand the case to the trial court for trial.

REVERSED AND REMANDED.

WALKER, Chief Justice, dissenting.

As I understand the general rule, a contract between parties which establishes an independent contractor relationship is determinative of the parties' relationship in the absence of extrinsic evidence indicating that the contract was a subterfuge or that the hiring party exercised control in a manner inconsistent with the contractual provisions. *See Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590, 592 (Tex.1964). Indeed, a contract that is a mere sham designed to conceal the true legal relationship between the parties will not control employment status. *See Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex.1992). As the majority recognizes, the Texas Supreme Court appears to have charted a new course in *Perez*, however oblivious

to such charting the Supreme Court may be.[4] Under the *Perez* case, examination of extrinsic evidence is always proper in determining "right of control."

In the instant case, uncontroverted evidence supplied by both parties indicated that Trinity exercised almost complete right of control over Hoffman's work. TRI was apparently a mere conduit for Trinity to obtain workers. With such extrinsic evidence present, the trial court was certainly presented with summary judgment evidence indicating the contract was a "mere sham" used to conceal the true relationship between Trinity and TRI. With all of the summary judgment evidence indicating that Trinity had the real "right of control" over Hoffman and his work at the Trinity work site, I find that the summary judgment in favor of Trinity was proper and should be affirmed as there was no fact issue raised.[5] Because the majority decides otherwise, I must humbly dissent.

4. In *Perez*, 842 S.W.2d at 630, the following statement appears: "A contract between two employers providing that one shall have the right of control over certain employees is a factor to be considered, but it is not controlling." Immediately following this statement is a citation to *Producer's Chem. Co. v. McKay*, 366 S.W.2d 220, 226 (Tex.1963). An examination of *McKay* reveals no such statement or anything that could be remotely construed to stand for such proposition. Indeed, *McKay* sets out a completely contrary proposition, namely: "When a contract, written or oral, between two employers expressly provides that one or the other shall have right of control, solution of the question [of right of control] is relatively simple." *McKay*, 366 S.W.2d at 226. The Court in *McKay* goes on to hold that it is only when the contract between the employers is implied or contains no provision for right of control that extrinsic evidence of workplace facts and circumstances is considered so as to determine "right of control." *Id.* In the instant case, the contract between Trinity and TRI is explicit and unambiguous. It places right of control squarely with TRI, and *explicitly* provides that "neither [TRI] nor any of those employed in furnishing such services shall be deemed the

agents, representatives, employees or servants of [Trinity]." As I read *McKay*, the contract language controls our inquiry into "right of control" as it explicitly places it with TRI. Under *McKay*, Trinity is not Hoffman's employer and summary judgment was improper. Nevertheless, *Perez* exists along with authoritative progeny. *See Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 n. 4 (Tex. 1993). Since the Supreme Court, for whatever reason, fails to candidly and expressly overrule prior holdings when they become unworkable, we Courts of Appeals are left to our own humble devices. As such, I find *Perez* impliedly overrules *McKay*, and the law now is that, regardless of how explicit a contract is as to which employer has "right of control," said contract is merely a factor to be considered along with whatever extrinsic evidence is relevant to determining the issue.

5. I recognize that neither party raises the point that the contract was a sham or a subterfuge, but as I read *Perez*, this would not prevent the trial court from making this determination *sua sponte* in the presence of unrefuted summary judgment evidence to the contrary.