Opinion issued May 23, 2002









 

 





In The

Court of Appeals

For The

First District of Texas






NO. 01-00-00256-CV






JOSE GARZA, Appellant


V.


EXCEL LOGISTICS, INC. AND INTERIM SERVICES PACIFIC, L.L.C.,
Appellees






On Appeal from the 129th District Court

Harris County, Texas

Trial Court Cause No. 98-36566






O P I N I O N

 Appellant, Jose Garza, ("Garza") sued Interim Services Pacific, L.L.C.
("Interim") and Excel Logistics, Inc. ("Excel") for damages resulting from on-the-job
injuries. Interim and Excel filed a joint motion for summary judgment contending
they were Garza's joint employers and that Garza's exclusive remedy against either
co-employer was limited to worker's compensation benefits. The trial court granted
the defendants' joint motion for summary judgment. Garza appeals from the grant of
summary judgment on two grounds. First, Garza contends that a material issue of fact
exists as to whether Interim and Excel were joint employers, thus precluding
summary judgment. Second, appellant argues that the appellees have not proven that
Garza is a covered employee for purposes of the Texas Worker's Compensation Act. 
We affirm.

Factual and Procedural Background

 Appellant was employed by Interim, a temporary employment agency, and
contracted out to perform manual labor for Excel. On September 3, 1997, Garza was
told by an Excel supervisor, Roberto Luna, to cross over a moving conveyor belt to
turn off a machine "quickly." In doing so, Garza fell and injured himself. Appellant
filed suit against Excel on July 31, 1998 for personal injuries. Garza then joined
Interim as a party to the suit, but later non-suited them. 

 Garza concedes his exclusive remedy (1) against Interim is the recovery of
worker's compensation benefits, and that he is, in fact, receiving such benefits from
Interim. However, he argues that Excel is not his employer, and thus, he can maintain
a common law negligence action against Excel for his injuries. Interim and Excel
argued they were co-employers, and urged that the exclusive remedy provision in the
Worker's Compensation statute applied to both of them. The trial court granted the
joint motion for summary judgment.

Law and Analysis

A. Standard of Review

 With a traditional summary judgment motion, the movants, Excel and Interim, 
must prove there is no genuine issue as to any material fact. See Randalls Food
Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). We assume all of Garza's
evidence is true and indulge every reasonable inference in his favor. See Science
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911(Tex. 1997). If Excel and Interim
can show they are entitled to judgment as a matter of law, Garza must present
evidence raising a fact issue to defeat the motion for summary judgment. See Haight
v. Savoy Apartments, 814 S.W.2d 849, 851 (Tex. App.-Houston [1st Dist.] 1991, writ
denied). The trial court's order does not specify the grounds on which it granted
summary judgment. Thus, we will affirm the summary judgment if any of the
theories advanced in the motion are meritorious.  See Cincinnati Life Ins. Co. v.
Cates, 927 S.W.2d 623, 625 (Tex. 1996).

B. Borrowed-Servant Doctrine Contrasted with Dual-Employer Doctrine

 The entity with the "right to control" the employee at the time of the accident
is the "employer" for worker's compensation purposes. (2) See Archem v. Austin Indus.,
Inc., 804 S.W.2d 268, 269 (Tex. App.-Houston [1st Dist.] 1991, no writ). The "right
of control" test applies in both a borrowed-servant situation, see Carr v. Carroll Co.,
646 S.W2d 561, 563 (Tex. App.-Dallas 1982, writ ref'd n.r.e.), and a dual-employer
situation. See Coronado v. Schoenmann Produce Co., No. 14-99-01335-CV, slip op.
at 2-5, (Tex. App.--Houston [14th Dist.] December 20, 2001, no pet.).

 In a borrowed-servant situation, an employee of a general employer temporarily
works for another, special employer. See Rodriguez v. Martin Landscape Mgmt. Co.,
Inc., 882 S.W.2d 602, 604 (Tex. App.-Houston [1st Dist.] 1994, no writ). If the
special employer has the exclusive right to control the manner and details of the work
during the temporary period, the employee is a borrowed servant, and the special
employer becomes the employer during the temporary term. See Carr, 646 S.W2d
at 563. If, however, the employee remains under the control of the general employer
while performing services for the special employer, the worker remains an employee
of the general employer. See Producers Chem. Co. v. McKay, 366 S.W.2d 220, 225
(Tex. 1963). The borrowed-servant doctrine applies in workers' compensation cases,
and protects special employers who have the right of control over the manner and
details of the work from common-law liability. See Marshall v. Toys-R-Us Nytex,
Inc., 825 S.W.2d 193, 196 (Tex. App.-Houston [14th Dist.] 1992, writ denied). 

 In a dual-employer situation, the general employer and the special employer
both share the right to control the employee. Section 226 of the Restatement of
Agency provides:

 A person may be the servant of two masters, [who are] not joint
employers, at one time as to one act, if the service to one does not
involve abandonment of the service to the other.

Restatement (Second) Of Agency § 226 (1958).

 When two entities have joint control over an employee's work, they are co-employers. See White v. Liberty Eylau Sch. Dist., 880 S.W.2d 156, 159 (Tex.
App.-Texarkana 1994, writ denied). The concept of joint control shared by dual or
co-employers has been found applicable in workers' compensation insurance cases. 
See Brown v. Aztec Rig Equip., Inc., 921 S.W2d 835, 844 (Tex. App.-Houston [14th
Dist.] 1996, writ denied) (upholding a contractual provision in which two companies
expressly agreed to be co-employers for workers' compensation insurance purposes,
and extending protection of exclusive remedy provision to both co-employers). 

 The key difference in the two doctrines is that under the borrowed servant
doctrine, the general employer relinquishes the right to control the employee to the
special employer. In contrast, under the dual-employer doctrine, both the general and
the special employer share the right to control the employee. The parties agree that
in this case, the issue is whether Interim and Excel are dual employers, not whether
Garza is a borrowed servant. Therefore, whether Interim ever relinquished control
of Garza to Excel is irrelevant. The issue is whether Excel, along with Interim, shared
the right to control Garza.

C. Fact Issue Concerning Dual-Employer Issue?

 Interim and Excel argue that they are dual employers and contend the exclusive
remedy protection of the Worker's Compensation Act should apply to both of them. 
Garza, citing Hoffman v. Trinity Indus., Inc., 979 S.W.2d 88 (Tex. App.--Beaumont
1998, pet. dism'd by agr.), contends that a fact issue concerning the dual-employer
theory precludes summary judgment.

 In Hoffman, the plaintiff, an injured employee, worked for a temporary
employment agency that assigned him to work for one of its clients. 979 S.W.2d at
89. The plaintiff received worker's compensation from the temporary employment
agency and sued the client for negligence. Id. The summary judgment evidence
showed two important factors: (1) The contract between the temporary employment
agency and the client provided that the temporary employment agency would have
"complete and sole control" over its employees, the details of the services, and
methods by which the services were accomplished, but (2) the client's employees
actually directed all of the details of the plaintiff's work. Id. at 90-91. The court of
appeals stated that "[i]f the contract did not exist, we would, of necessity, conclude
the summary judgment was proper, because [the client's] summary judgment
evidence demonstrates [it] controlled the details of the work." Id. at 91. However,
the contract, which specified that the employment agency had the sole right to control
the plaintiff's work, was at least some evidence that the client did not have a similar
right of control. Id. at 90-91. Because there was some evidence that the client had
no right to control the employee, a fact question was raised on both the issues of dual
employer and borrowed servant. Id.

 As stated earlier, the sole issue presented in this case is whether Excel had the
right to control Garza. If it did, Excel was also Garza's "employer" and cannot be
sued for common law causes of action. Thus, we must look at the summary judgment
evidence presented by Excel to show that it had the right to control Garza's work.

 1. The Contract

 The Interim/Excel contract does not directly address the right to control an
employee or the co-employer issue . The relevant contractual provisions provide that,
in exchange for an hourly rate per employee, Interim shall be responsible for: (1)
assigning "necessary personnel (collectively, the 'Employees')" and equipment to
Excel; (2) determining that the employees were able to perform their job functions; (3)
maintaining satisfactory standards of competency, conduct, integrity, safety
regulations, and Excel's work rules; (4) using Interim personnel to supervise the
workers on the Excel premises; (5) handling all personnel actions including
performance, discipline, recruitment, hiring, and supervision; (6) paying the
employees their wages and overtime; (6) carrying worker's compensation insurance
for the employees with a minimum of the statutory limits. Interim was to do all of
these things "as approved and supervised by Excel." (Emphasis added). Interim
acknowledged in the contract that the assigned personnel would not be eligible for any
Excel employee benefits. The contract gave Excel the right to request Interim to
replace any employees who were not performing in a satisfactory manner. Excel
retained the right to hire any employee as a regular employee of Excel without cost or
penalty. 

 The contract in Hoffman raised a fact issue on the dual-employer issue because
it stated that the client had no right to control the employee, i.e., it negated the client's
right to control the employee. Id. at 90. Although the contract in this case clearly
contemplates that Interim will exercise control over the leased employees, it does not
negate Excel's right to also control the employees. To the contrary, the contract
provides that Interim's functions will be "approved and supervised by Excel." 
Because the contract does not negate Excel's right to control the leased employees, it
does not raise a fact question on the issue of dual employment.

 2. Other Summary Judgment Evidence

 a. Interim's right to control

 Interim provided worker's compensation benefits to Garza, and Garza received
paychecks from Interim while he was assigned to the Excel job site. However, "mere
subscription to, or the 'gratuitous' providing of, workers' compensation benefits is
irrelevant to the question of control." See Archem, 804 S.W.2d at 270. Garza was
hired by Interim and "assigned" to Excel. Interim maintained two on-site supervisors
at Excel. These supervisors regulated the appellant's daily performance and
administered safety training and safety equipment to Interim employees working at
Excel. Mr. Joseph Castenada was the client service representative hired by Interim to
monitor Interim employees at Excel. Any violations of Interim policies were to be
reported to Mr. Castenada, and it was within his discretion to "write up" or terminate
any employee who was not following his instructions. Mr. Castenada also had the
authority to re-assign job duties of Interim employees working at Excel. The Excel
supervisors contacted him to change job assignments. Mr. Castenada also had the
discretion to send an employee home if he was injured or ill, give an employee a
break, or assign an employee to light duty. 

 Ms. Kathleen Collier was an Interim manager on the Excel premises. She was
responsible for supervising the employees and enforcing safety regulations. Collier
testified by deposition that Garza was an Interim employee. 

 Thus, there is substantial evidence that Interim had the right to control Garza's
work. However, as we stated earlier, Interim's right to control Garza is uncontested. 
The issue is whether Excel also had the right to control Garza.

 b. Excel's right to control

 Excel does not dispute that Interim provided Garza with paychecks, human
resource benefits, training, assignments, and other services. Rather, Excel contends
that, once assigned to them, Excel provided specific instructions to Garza regarding
how, when, and where he was to perform his job, and, thus, the dual-employer doctrine
applies.

 For example, Castenada was asked in his deposition if "Excel supervisors
dictated the day-to-day detail of the Interim workers that were on Excel's property." 
He answered, "That's correct." Castenada also testified that any instructions he gave
the workers would be subject to Excel's approval. Most importantly, it was actually
an Excel supervisor, Roberto Luna, who ordered Garza to jump onto a moving
conveyor belt to turn it off "quickly" when Garza was injured. (3) Garza responded to
his request, indicating that Garza acknowledged Mr. Luna also had the right to control
his work. Furthermore, Garza's deposition testimony suggests that he felt both Mr.
Castenada and Mr. Luna controlled his daily activity, lending support to the dual-employer theory. Garza's deposition testimony includes the following exchange, with
objections omitted:

 Q: Who is the person that instructed you on exactly what you were
supposed to do at Excel and how to do it? 


 A: Joe Castenada.


 ...


 Q: Did Joe ever tell you "go over to Excel and do whatever they tell you
to do?"


 A: Yes. He would tell me. He would send me.


 Q: And he would tell you to do whatever the people at Excel told you to
do, correct?


 A: Well, Roberto Luna would talk to him; and he would tell us.


 Q: Roberto Luna would tell you what to do?


 A: Every once in a while. But Joe Castenada would also tell us what to
do because he was my supervisor at Interim. 


 Q: Joe Castenada, would he instruct you to go do what the people at
Excel told you to do?


 A: Yes. Every once in a while.


 ...


 Q: Generally, on a day-to-day basis, who was the person that told you
exactly what to do and how to do it?


 A. As I said, sometimes it would be Roberto; and sometimes it would be
Joe Castenada.


 Q: Half and half?


 A: My supervisor was Joe Castenada. He would be the one who would
tell me what time I had to arrive, that I had to work fine, and some things
to do inside.


 ...


 Q: Most of time, who gave you instruction on the detail of your day-to-day work at Excel?


 A. Sometimes it would be him [Joe Castenada]. Sometimes it would be
Roberto Luna.


 Q: And you can't say which is more?


 A: Well, more, I guess, would be Joe Castenada because Roberto Luna
would sometimes be absent from work a lot; and he wouldnt' come to
work. And whenever he was not there, then Joe Castenada would come
down to see how the work was going. 


 Q: So it was an equal split between Joe Castenada, approximately, and
Robert Luna in who supervised the detail of your day-to-day job
activities?


 A: I don't know. 

D. Conclusion Regarding Excel's Right to Control Plaintiff

 An analysis of the contractual provisions and other summary judgment evidence
shows that Interim clearly had the right to control Garza and the other temporary
workers. However, Excel brought forth evidence that it also exercised control over
Garza's work. Thus, the burden shifted to Garza to raise a fact issue by bringing
summary judgment evidence to show that Excel had no right to control the details of
his work. This, Garza has failed to do. Even assuming all of Garza's testimony
regarding Interim's right to control him is true, the deposition testimony establishes
Excel controlled him as well. Neither the contract, nor any of the deposition testimony
negates Excel's right to control Garza's work. As such, no issue of fact is raised on
the dual-employer theory.

 Co-employers are both entitled to protection from common-law liability because
the exclusive remedy provision of the Worker's Compensation Act applies to both
coemployers. See Brown, 921 S.W.2d at 846. Thus, Garza cannot recover for
personal injuries against Excel, and the grant of summary judgement was proper. We
overrule Garza's first issue.

E. "Covered Employee" Status

 Worker's compensation payments are the exclusive remedy for an injured
employee if the employee is "covered by workers' compensation insurance coverage
. . .". Tex. Labor Code § 408.001 (Vernon's 1996). In point of error two, Garza
contends that there is a fact issue about whether he is a "covered employee" as to
Excel. Excel responds that it procured coverage for Garza through its contract with
Interim, which provided:

 In consideration for [Interim's] performance of the Services, [Interim]
shall receive as sole payment, the hourly rates negotiated with Exel [sic]
Logistics Operations in the respective market plus the markups reflected
for the appropriate classification of temporary labor for the respective
market as set forth in Exhibit A1 (Rate Schedule). The markups in
Exhibit A1 include all costs, overhead and burden associated with
providing temporary labor to Exel [sic] Logistics, including but not
limited to costs associated with testing, background investigations,
training, worker's compensation, insurance, etc. (Emphasis added).


 Robert Whipple, Excel's Corporate Claims Manager, testified that pursuant to
this contract term, Excel made payments to Interim to cover the costs of the worker's
compensation insurance that Interim carried for its workers. It is undisputed that
Garza received worker's compensation payments from coverage provided by Interim.

 In Pederson v. Apple Corrugated Packaging, Inc., 874 S.W.2d 135, 137 (Tex.
App.--Eastland 1994, writ denied), the plaintiff was injured while working under the
direction and control of Apple, but received worker's compensation payments under
a policy issued to a company called Staff Benefits, Inc. The evidence showed that
Apple provided the insurance "through an arrangement with . . . Staff Benefits, Inc." 
Id. at 137. The court held that the plaintiff was a "covered employee" because "[t]he
record conclusively establishes that [plaintiff] was receiving workers' compensation
benefits as a result of her injury while working for Apple and that those benefits
resulted from an 'arrangement' between Apple (her employer) and Staff Benefits, Inc." 
Id. at 138.

 The same is true in this case. The record conclusively establishes that Garza
was receiving worker's compensation benefits from Interim, and that Excel, under the
terms of the contract, was required to pay Interim for the costs associated with
maintaining such worker's compensation insurance. As such, Excel provided
worker's compensation insurance for Garza, albeit through Interim. See also Williams
v. Brown & Root, Inc., 947 S.W.2d 673, 677 (Tex. App.--Texarkana 1997, no writ)
("There is 'no reason why an employer cannot contractually provide for payment of
premiums on his employees by a third-party acting on his behalf.' 'The manner in
which the insurance is paid is immaterial, so long as there is a compensation policy in
force.'") (quoting Brown v. Aztec Rig Equip., Inc., 921 S.W.2d 835, 842 (Tex.
App.--Houston [14th Dist.] 1996, writ denied) and Cherry v. Chustz, 715 S.W.2d 742,
744 (Tex. App.--Dallas 1986, no writ)).

 We overrule point of error two.

 We affirm the judgment.




 Michael Schneider

 Chief Justice


Panel consists of Chief Justice Schneider and Justices Jennings and Wilson (4).


Publish. Tex. R. App. P. 47.




 
1. " ' 
 ' 
 - " 
 § ' 
2. 
 " " 
" " '
 ' 
 - 
 
 - ' 
 § 
 
 
 - 
3. " ' 
 " "
 
 " 
4.