Jose GARZA, Appellant,

v.

EXCEL LOGISTICS, INC. and Interim Services Pacific, L.L.C., Appellees.

No. 01–00–00256–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 23, 2002.

Rehearing Overruled Nov. 14, 2002.

Lauren B. Harris, Hanen, Johnson & Spalding, L.L.P., Houston, for appellant.

Linda Marie Dedman, Robert D. Allen, Baker & McKenzie, Dallas, for appellee.

Panel consists of Chief Justice SCHNEIDER and Justices JENNINGS and WILSON *.

## OPINION

MICHAEL SCHNEIDER, Chief Justice.

Appellant, Jose Garza, ("Garza") sued Interim Services Pacific, L.L.C. ("Interim") and Excel Logistics, Inc. ("Excel") for damages resulting from on-the-job injuries. Interim and Excel filed a joint motion for summary judgment contending they were Garza's joint employers and that Garza's exclusive remedy against either co-employer was limited to worker's compensation benefits. The trial court granted

---

* The Honorable Davie L. Wilson, retired justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

the defendants' joint motion for summary judgment. Garza appeals from the grant of summary judgment on two grounds. First, Garza contends that a material issue of fact exists as to whether Interim and Excel were joint employers, thus precluding summary judgment. Second, appellant argues that the appellees have not proven that Garza is a covered employee for purposes of the Texas Worker's Compensation Act. We affirm.

### Factual and Procedural Background

Appellant was employed by Interim, a temporary employment agency, and contracted out to perform manual labor for Excel. On September 3, 1997, Garza was told by an Excel supervisor, Roberto Luna, to cross over a moving conveyor belt to turn off a machine "quickly." In doing so, Garza fell and injured himself. Appellant filed suit against Excel on July 31, 1998 for personal injuries. Garza then joined Interim as a party to the suit, but later non-suited them.

Garza concedes his exclusive remedy[1] against Interim is the recovery of worker's compensation benefits, and that he is, in fact, receiving such benefits from Interim. However, he argues that Excel is not his employer, and thus, he can maintain a common law negligence action against Excel for his injuries. Interim and Excel argued they were co-employers, and urged that the exclusive remedy provision in the Worker's Compensation statute applied to both of them. The trial court granted the joint motion for summary judgment.

### Law and Analysis

#### A. Standard of Review

■ With a traditional summary judgment motion, the movants, Excel and Interim, must prove there is no genuine issue as to any material fact. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). We assume all of Garza's evidence is true and indulge every reasonable inference in his favor. *See Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911(Tex.1997). If Excel and Interim can show they are entitled to judgment as a matter of law, Garza must present evidence raising a fact issue to defeat the motion for summary judgment. *See Haight v. Savoy Apartments*, 814 S.W.2d 849, 851 (Tex.App.-Houston [1st Dist.] 1991, writ denied). The trial court's order does not specify the grounds on which it granted summary judgment. Thus, we will affirm the summary judgment if any of the theories advanced in the motion are meritorious. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996).

#### B. Borrowed–Servant Doctrine Contrasted with Dual–Employer Doctrine

■ The entity with the "right to control" the employee at the time of the accident is the "employer" for worker's compensation purposes.[2] *See Archem v.*

---

1. "Recovery of workers' compensation benefits is the *exclusive remedy* of an employee covered by workers' compensation insurance coverage ... for the death of or a work-related injury sustained by the employee." TEX. LABOR CODE ANN. § 408.001(Vernon's 1996) (emphasis added).

2. We are aware that the Texas Supreme Court recently concluded that the Staff Leasing Services Act "statutorily supersedes the common

law "right of control" test in determining employer status of leased employees" for workers' compensation insurance purposes. *Texas Workers' Compensation Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 595–96 (Tex. 2000). If applicable, the Staff Leasing Services Act deems a license holder that engages in staff leasing services and its client company as co-employers for workers' compensation insurance purposes. *See* TEX. LABOR CODE

*Austin Indus., Inc.,* 804 S.W.2d 268, 269 (Tex.App.-Houston [1st Dist.] 1991, no writ). The "right of control" test applies in both a borrowed-servant situation, *see Carr v. Carroll Co.,* 646 S.W.2d 561, 563 (Tex.App.-Dallas 1982, writ ref'd n.r.e.), and a dual-employer situation. *See Coronado v. Schoenmann Produce Co.,* No. 14-99-01335-CV, slip op. at 2-5, 2001 WL 1636268 (Tex.App.-Houston [14th Dist.] December 20, 2001, no pet. h.).

In a borrowed-servant situation, an employee of a general employer temporarily works for another, special employer. *See Rodriguez v. Martin Landscape Mgmt., Inc.,* 882 S.W.2d 602, 604 (Tex. App.-Houston [1st Dist.] 1994, no writ). If the special employer has the exclusive right to control the manner and details of the work during the temporary period, the employee is a borrowed servant, and the special employer becomes the employer during the temporary term. *See Carr,* 646 S.W.2d at 563. If, however, the employee remains under the control of the general employer while performing services for the special employer, the worker remains an employee of the general employer. *See Producers Chem. Co. v. McKay,* 366 S.W.2d 220, 225 (Tex.1963). The borrowed-servant doctrine applies in workers' compensation cases, and protects special employers who have the right of control over the manner and details of the work from common-law liability. *See Marshall v. Toys-R-Us Nytex, Inc.,* 825 S.W.2d 193, 196 (Tex.App.-Houston [14th Dist.] 1992, writ denied).

In a dual-employer situation, the general employer and the special employer both share the right to control the employee. Section 226 of the Restatement of Agency provides:

A person may be the servant of two masters, [who are] not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other.

RESTATEMENT (SECOND) OF AGENCY § 226 (1958).

When two entities have joint control over an employee's work, they are co-employers. *See White v. Liberty Eylau Sch. Dist.,* 880 S.W.2d 156, 159 (Tex.App.-Texarkana 1994, writ denied). The concept of joint control shared by dual or co-employers has been found applicable in workers' compensation insurance cases. *See Brown v. Aztec Rig Equip., Inc.,* 921 S.W.2d 835, 844 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (upholding a contractual provision in which two companies expressly agreed to be co-employers for workers' compensation insurance purposes, and extending protection of exclusive remedy provision to both co-employers).

The key difference in the two doctrines is that under the borrowed servant doctrine, the general employer relinquishes the right to control the employee to the special employer. In contrast, under the dual-employer doctrine, both the general and the special employer share the right to control the employee. The parties agree that in this case, the issue is whether Interim and Excel are dual employers, not whether Garza is a borrowed servant. Therefore, whether Interim ever relinquished control of Garza to Excel is irrelevant. The issue is whether Excel, along with Interim, shared the right to control Garza.

§ 91.042(c) (Vernon 1996). However, neither appellant nor appellee contend the Staff Leasing Services Act is applicable in this case, and, thus, we apply the common law right of control test to determine if Interim and Excel are co-employers.

## C. Fact Issue Concerning Dual–Employer Issue?

Interim and Excel argue that they are dual employers and contend the exclusive remedy protection of the Worker's Compensation Act should apply to both of them. Garza, citing *Hoffman v. Trinity Indus., Inc.*, 979 S.W.2d 88 (Tex.App.-Beaumont 1998, pet. dism'd by agr.), contends that a fact issue concerning the dual-employer theory precludes summary judgment.

In *Hoffman*, the plaintiff, an injured employee, worked for a temporary employment agency that assigned him to work for one of its clients. 979 S.W.2d at 89. The plaintiff received worker's compensation from the temporary employment agency and sued the client for negligence. *Id.* The summary judgment evidence showed two important factors: (1) The contract between the temporary employment agency and the client provided that the temporary employment agency would have "complete and sole control" over its employees, the details of the services, and methods by which the services were accomplished, but (2) the client's employees actually directed all of the details of the plaintiff's work. *Id.* at 90–91. The court of appeals stated that "[i]f the contract did not exist, we would, of necessity, conclude the summary judgment was proper, because [the client's] summary judgment evidence demonstrates [it] controlled the details of the work." *Id.* at 91. However, the contract, which specified that the employment agency had the sole right to control the plaintiff's work, was at least some evidence that the client *did not* have a similar right of control. *Id.* at 90–91. Because there was some evidence that the client had no right to control the employee, a fact question was raised on both the issues of dual employer and borrowed servant. *Id.*

As stated earlier, the sole issue presented in this case is whether Excel had the right to control Garza. If it did, Excel was also Garza's "employer" and cannot be sued for common law causes of action. Thus, we must look at the summary judgment evidence presented by Excel to show that it had the right to control Garza's work.

### 1. The Contract

 The Interim/Excel contract does not directly address the right to control an employee or the co-employer issue. The relevant contractual provisions provide that, in exchange for an hourly rate per employee, Interim shall be responsible for: (1) assigning "necessary personnel (collectively, the 'Employees')" and equipment to Excel; (2) determining that the employees were able to perform their job functions; (3) maintaining satisfactory standards of competency, conduct, integrity, safety regulations, and Excel's work rules; (4) using Interim personnel to supervise the workers on the Excel premises; (5) handling all personnel actions including performance, discipline, recruitment, hiring, and supervision; (6) paying the employees their wages and overtime; (6) carrying worker's compensation insurance for the employees with a minimum of the statutory limits. Interim was to do all of these things "*as approved and supervised by Excel.*" (Emphasis added). Interim acknowledged in the contract that the assigned personnel would not be eligible for any Excel employee benefits. The contract gave Excel the right to request Interim to replace any employees who were not performing in a satisfactory manner. Excel retained the right to hire any employee as a regular employee of Excel without cost or penalty.

The contract in *Hoffman* raised a fact issue on the dual-employer issue because it stated that the client had *no right* to control the employee, i.e., it negated the

client's right to control the employee. *Id.* at 90. Although the contract in this case clearly contemplates that Interim will exercise control over the leased employees, it does not negate Excel's right to also control the employees. To the contrary, the contract provides that Interim's functions will be "approved and supervised by Excel." Because the contract does not negate Excel's right to control the leased employees, it does not raise a fact question on the issue of dual employment.

### 2. Other Summary Judgment Evidence

#### a. Interim's right to control

 Interim provided worker's compensation benefits to Garza, and Garza received paychecks from Interim while he was assigned to the Excel job site. However, "mere subscription to, or the 'gratuitous' providing of, workers' compensation benefits is irrelevant to the question of control." *See Archem,* 804 S.W.2d at 270. Garza was hired by Interim and "assigned" to Excel. Interim maintained two on-site supervisors at Excel. These supervisors regulated the appellant's daily performance and administered safety training and safety equipment to Interim employees working at Excel. Mr. Joseph Castenada was the client service representative hired by Interim to monitor Interim employees at Excel. Any violations of Interim policies were to be reported to Mr. Castenada, and it was within his discretion to "write up" or terminate any employee who was not following his instructions. Mr. Castenada also had the authority to re-assign job duties of Interim employees working at Excel. The Excel supervisors contacted him to change job assignments. Mr. Castenada also had the discretion to

send an employee home if he was injured or ill, give an employee a break, or assign an employee to light duty.

Ms. Kathleen Collier was an Interim manager on the Excel premises. She was responsible for supervising the employees and enforcing safety regulations. Collier testified by deposition that Garza was an Interim employee.

Thus, there is substantial evidence that Interim had the right to control Garza's work. However, as we stated earlier, Interim's right to control Garza is uncontested. The issue is whether Excel also had the right to control Garza.

#### b. Excel's right to control

 Excel does not dispute that Interim provided Garza with paychecks, human resource benefits, training, assignments, and other services. Rather, Excel contends that, once assigned to them, Excel provided specific instructions to Garza regarding how, when, and where he was to perform his job, and, thus, the dual-employer doctrine applies.

For example, Castenada was asked in his deposition if "Excel supervisors dictated the day-to-day detail of the Interim workers that were on Excel's property." He answered, "That's correct." Castenada also testified that any instructions he gave the workers would be subject to Excel's approval. Most importantly, it was actually an Excel supervisor, Roberto Luna, who ordered Garza to jump onto a moving conveyor belt to turn it off "quickly" when Garza was injured.[3] Garza responded to his request, indicating that Garza acknowledged Mr. Luna also had the right to control his work. Furthermore, Garza's

---

**3.** Garza was asked, in his deposition, "Why didn't you just walk around the machine, instead of stepping on top of the conveyer belt?" He responded, "I was going to turn around, but Roberto Luna told me to cross over down there in order to turn off the machine quickly."

deposition testimony suggests that he felt both Mr. Castenada and Mr. Luna controlled his daily activity, lending support to the dual-employer theory. Garza's deposition testimony includes the following exchange, with objections omitted:

Q: Who is the person that instructed you on exactly what you were supposed to do at Excel and how to do it?

A: Joe Castenada.

. . .

Q: Did Joe ever tell you "go over to Excel and do whatever they tell you to do?"

A: Yes. He would tell me. He would send me.

Q: And he would tell you to do whatever the people at Excel told you to do, correct?

A: Well, Roberto Luna would talk to him; and he would tell us.

Q: Roberto Luna would tell you what to do?

A: Every once in a while. But Joe Castenada would also tell us what to do because he was my supervisor at Interim.

Q: Joe Castenada, would he instruct you to go do what the people at Excel told you to do?

A: Yes. Every once in a while.

. . .

Q: Generally, on a day-to-day basis, who was the person that told you exactly what to do and how to do it?

A: As I said, sometimes it would be Roberto; and sometimes it would be Joe Castenada.

Q: Half and half?

A: My supervisor was Joe Castenada. He would be the one who would tell me what time I had to arrive, that I had to work fine, and some things to do inside.

. . .

Q: Most of time, who gave you instruction on the detail of your day-to-day work at Excel?

A: Sometimes it would be him [Joe Castenada]. Sometimes it would be Roberto Luna.

Q: And you can't say which is more?

A: Well, more, I guess, would be Joe Castenada because Roberto Luna would sometimes be absent from work a lot; and he wouldn't come to work. And whenever he was not there, then Joe Castenada would come down to see how the work was going.

Q: So it was an equal split between Joe Castenada, approximately, and Robert Luna in who supervised the detail of your day-to-day job activities?

A: I don't know.

## D. Conclusion Regarding Excel's Right to Control Plaintiff

■ An analysis of the contractual provisions and other summary judgment evidence shows that Interim clearly had the right to control Garza and the other temporary workers. However, Excel brought forth evidence that it also exercised control over Garza's work. Thus, the burden shifted to Garza to raise a fact issue by bringing summary judgment evidence to show that Excel had no right to control the details of his work. This, Garza has failed to do. Even assuming all of Garza's testimony regarding Interim's right to control him is true, the deposition testimony establishes Excel controlled him as well. Neither the contract, nor any of the deposition testimony negates Excel's right to control Garza's work. As such, no issue of fact is raised on the dual-employer theory.

■ Co-employers are both entitled to protection from common-law liability because the exclusive remedy provision of the Worker's Compensation Act applies to

both coemployers. *See Brown*, 921 S.W.2d at 846. Thus, Garza cannot recover for personal injuries against Excel, and the grant of summary judgement was proper. We overrule Garza's first issue.

### E. "Covered Employee" Status

 Worker's compensation payments are the exclusive remedy for an injured employee if the employee is "covered by workers' compensation insurance coverage ...". Tex. Labor Code § 408.001 (Vernon's 1996). In point of error two, Garza contends that there is a fact issue about whether he is a "covered employee" as to Excel. Excel responds that it procured coverage for Garza through its contract with Interim, which provided:

> In consideration for [Interim's] performance of the Services, *[Interim] shall receive as sole payment, the hourly rates negotiated with Exel* [sic] Logistics Operations in the respective market *plus the markups* reflected for the appropriate classification of temporary labor for the respective market as set forth in Exhibit A1 (Rate Schedule). *The markups* in Exhibit A1 *include all costs,* overhead and burden *associated with providing temporary labor to Exel* [sic] Logistics, *including* but not limited to costs associated with testing, background investigations, training, *worker's compensation,* insurance, etc. (Emphasis added).

Robert Whipple, Excel's Corporate Claims Manager, testified that pursuant to this contract term, Excel made payments to Interim to cover the costs of the worker's compensation insurance that Interim carried for its workers. It is undisputed that Garza received worker's compensation payments from coverage provided by Interim.

In *Pederson v. Apple Corrugated Packaging, Inc.,* 874 S.W.2d 135, 137 (Tex.App.-Eastland 1994, writ denied), the plaintiff was injured while working under the direction and control of Apple, but received worker's compensation payments under a policy issued to a company called Staff Benefits, Inc. The evidence showed that Apple provided the insurance "through an arrangement with ... Staff Benefits, Inc." *Id.* at 137. The court held that the plaintiff was a "covered employee" because "[t]he record conclusively establishes that [plaintiff] was receiving workers' compensation benefits as a result of her injury while working for Apple and that those benefits resulted from an 'arrangement' between Apple (her employer) and Staff Benefits, Inc." *Id.* at 138.

The same is true in this case. The record conclusively establishes that Garza was receiving worker's compensation benefits from Interim, and that Excel, under the terms of the contract, was required to pay Interim for the costs associated with maintaining such worker's compensation insurance. As such, Excel provided worker's compensation insurance for Garza, albeit through Interim. *See also Williams v. Brown & Root, Inc.,* 947 S.W.2d 673, 677 (Tex.App.-Texarkana 1997, no writ) ("There is 'no reason why an employer cannot contractually provide for payment of premiums on his employees by a third-party acting on his behalf.' 'The manner in which the insurance is paid is immaterial, so long as there is a compensation policy in force.'") (*quoting Brown v. Aztec Rig Equip., Inc.,* 921 S.W.2d 835, 842 (Tex. App.-Houston [14th Dist.] 1996, writ denied) and *Cherry v. Chustz,* 715 S.W.2d 742, 744 (Tex.App.-Dallas 1986, no writ)).

We overrule point of error two.

We affirm the judgment.