Opinion issued October 28, 2004 
 















     





In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00419-CV




MELQUIADES FLORES, SR., INDIVIDUALLY AND AS
REPRESENTATIVE OF THE ESTATE OF HIS SON, MELQUIADES
FLORES, JR., AND MARY FLORES, Appellants

V.

NORTH AMERICAN TECHNOLOGIES GROUP, INC.; TIETEK, INC.;
AND SKILLMASTER STAFFING SERVICES, INC., Appellees




On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2002-05760




O P I N I O N
          This is an appeal from a summary judgment rendered in favor of appellees,
TieTek, Inc., its parent company North American Technologies Group, Inc.
(collectively “TieTek”), and Skillmaster Staffing Services, Inc. (“Skillmaster”). 
Appellants, Melquiades Flores, Sr. and Mary Flores (“the Floreses”), filed a wrongful
death action for the death of their son, Melquiades Flores, Jr.’s (“Mike Flores”), from
injuries he sustained while working on TieTek’s premises. On appeal, the issue is
whether TieTek was Mike Flores’s employer, thereby entitling TieTek to application
of the exclusive remedy provision of the Texas Workers’ Compensation Act
(“TWCA”).


 We affirm. 
BACKGROUND
          Skillmaster, a temporary employment agency that supplies labor to clients,
hired Mike Flores. On June 6, 2001, Skillmaster assigned Mike Flores to work at the
TieTek plastics manufacturing plant. TieTek is in the business of producing and
marketing railroad ties made from recycled materials. On August 6, 2001, TieTek
entered into a master vendor agreement (“the contract”) with Skillmaster for the
placement of additional laborers at the TieTek facility. The contract expressly
required that Skillmaster maintain workers’ compensation insurance for personnel
provided by Skillmaster to TieTek’s facility, but passed the cost on to TieTek. On
October 24, 2001, Mike Flores was fatally injured while working on a plastics
molding machine at the TieTek facility. Appellants, Melquiades Flores, Sr. and Mary
Flores, sued TieTek and Skillmaster for the wrongful death of their son, Mike Flores,
resulting from on-the-job injuries. North American Technologies Group, Inc. and
Tietek, Inc. are jointly represented and have filed all pleadings and motions together.
          TieTek filed a motion for summary judgment contending that Mike Flores was
its borrowed servant or, alternatively, that both TieTek and Skillmaster were co-employers of Mike Flores and that Flores’s exclusive remedy against TieTek was
limited to workers’ compensation benefits given the statutory immunity provided by
the TWCA. Tex. Lab. Code Ann. § 408.001 (Vernon 1996).


 Skillmaster filed a no-evidence motion for summary judgment contending that it was Mike Flores’s
employer under the TWCA and thus protected by the exclusive remedy provision of
TWCA. TieTek joined in Skillmaster’s motion pursuant to Rule 58. Tex. R. Civ. P.
58. The trial court granted defendant Skillmaster’s no-evidence motion for summary
judgment as well as TieTek’s traditional motion for summary judgment. Appellants
filed a motion for new trial and/or to reconsider the summary judgments, but the trial
court denied the motion after a hearing.
          The Floreses appeal from the grant of summary judgment in favor of TieTek
on three grounds. First, appellants contend that the trial court used the wrong test to
determine whether TieTek was the employer of Mike Flores under TWCA and,
thereby, whether it was entitled to summary judgment. Second, appellants contend
that, even if the trial court used the proper test, TieTek was not Mike Flores’s
employer under the common-law right-to-control test. Third, appellants contend that
TieTek was not Mike Flores’s employer under the TWCA’s definition of “employer.”
          On appeal, the Floreses concede that their exclusive remedy against Skillmaster
is the recovery of workers’ compensation benefits and that the trial court’s grant of
summary judgment in Skillmaster’s favor “may not have been in error.”


 However,
appellants complain that TieTek was not Mike Flores’s employer, and thus, they may
maintain a common-law wrongful death action against TieTek. TieTek argues that
it was a borrowing employer or, alternatively, it was a co-employer with Skillmaster,
and urged that the exclusive remedy provision in the TWCA applied to both TieTek
and Skillmaster.
DISCUSSION
          In reviewing a summary judgment, an appellate court must consider whether
the successful movant at the trial level carried its burden of showing that there was
no genuine issue of material fact and that judgment should be rendered as a matter of
law. Tex. R. Civ. P. 166a(c); KPMG Peat Marwick v. Harrison County Hous. Fin.
Corp., 988 S.W.2d 746, 748 (Tex. 1999). We assume all of the non-movant’s
evidence is true and indulge every reasonable inference in favor of the non-movant. 
Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). If the movant can
show it is entitled to judgment as a matter of law, the burden shifts to the non-movant
to present evidence raising a fact issue to defeat the motion for summary judgment. 
Haight v. Savoy Apartments, 814 S.W.2d 849, 851 (Tex. App.—Houston [1st Dist.]
1991, writ denied). When the trial court’s order does not specify the grounds on
which a motion for summary judgment was granted, we will affirm the summary
judgment if any of the theories advanced in the motion is meritorious. Cincinnati Life
Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996).
A.      Status as an Employer
          In their first point of error, appellants contend that the trial court erred in
granting TieTek’s motion for summary judgment because the trial court improperly
employed the right-to-control test to determine whether TieTek was an employer for
the purpose of workers’ compensation law. An employer under the TWCA is
protected by the exclusive remedy provision, which bars common-law causes of
action claims by its injured employees. See Tex. Lab. Code Ann. § 408.001 (Vernon
1996). Specifically, appellants argue that the Texas Supreme Court has rejected the
right-to-control test in favor of the TWCA’s statutory definition of “employer,”
thereby requiring remand to the trial court. For their authority, appellants rely on
Wingfoot Enterprises v. Alvarado, 111 S.W.3d 134 (Tex. 2003). 
          Conversely, TieTek contends that the appellants’ reliance on Alvarado is
misplaced and that the trial court applied the proper standard for determining whether
TieTek had employer status. TieTek claims that the Alvarado decision supports the
trial court’s grant of summary judgment in favor of both TieTek and Skillmaster
because the Texas Supreme Court—notwithstanding a suggestion to the contrary in
Justice Enoch’s concurring opinion—did not eliminate the right-to-control test for
determining whether an entity that controls the work of a borrowed employee is an
employer for purposes of the TWCA. See Alvarado, 111 S.W.3d at 149, 150 (Enoch,
J., concurring) (stating that “though rejecting the test, the Court appears to rely on
that test”). Rather, TieTek claims that the Court “expressly recognized that the right
of control test is still applicable.”
          The Alvarado court did not reject the right-to-control test used to determine an
entity’s status as an employer for purposes of the applicability of the TWCA,
including its exclusive remedy provision. Id. at 141. In Alvarado, the Court held that
an employee can have more than one employer for the purposes of the TWCA and its
exclusive remedy provision. Id. at 144.


 The facts of Alvarado were similar, but the
inverse of those presented here, as Alvarado concerned the employer status of a
temporary staffing company. Tandem, a temporary staffing provider, employed
Alvarado, who was assigned to Web to do manual assembly work pursuant to an
agreement between Tandem and Web. Id. at 135. After she sustained injuries while
operating a machine at Web’s manufacturing facility, Alvarado sued both Tandem
and Web. Id. At the time of the injury, Tandem maintained workers’ compensation
insurance coverage for Alvarado, and Web also had workers’ compensation insurance
coverage for its employees. However, no agreement between the two companies
stated which workers’ compensation insurance policy would cover the Tandem-assigned workers at Web’s facility. Id. Tandem’s motion for summary judgment was
granted, while the suit against Web proceeded to trial. Id. at 136. After a jury finding
that Alvarado was Web’s borrowed servant, the trial court rendered final judgment
in Web’s favor based on the exclusive remedy provision. Id. Alvarado appealed the
summary judgment in favor of Tandem. 
          The Texas courts have long recognized that courts determine whether a
workers’ compensation insurance policy covers a worker’s injury by determining
whether the subscribing company is the worker’s employer under the right-to-control
test. Texas Workers’ Comp. Ins. Fund v. Del Indus., Inc., 35 S.W.3d 591, 595 (Tex.
2000) (citing Thompson v. Travelers Indem. Co., 789 S.W.2d 277, 278 (Tex.1990)). 
In fact, in Alvarado the supreme court implicitly recognized that a legitimate way for
one to become an employer for TWCA purposes is through control: “The question we
must decide is . . . whether the exclusive remedy provision can apply to both the
general employer and one who has become an employer by controlling the details of
a worker’s work at the time of injury.” Alvarado, 111 S.W.3d at 139. If the court had
“rejected the ‘right to control’ test to determine ‘employer’ status in the workers’
compensation context,” as appellants contend, there would be no reason to resolve
the issue taken up by the Alvarado court. Instead, the court’s ruling left the right-to-control test unaffected as the court concluded, “The fact that Web actually controlled
the details of Alvarado’s work at the time she was injured, and thus was also an
employer within the meaning of the Act, does not preclude the applicability of the
Act’s provisions, including the exclusive remedy, to both Tandem and Web.” Id. at
149 (emphasis added).
          The Alvarado court stressed, however, that it was deciding “only whether there
may be two employers for workers’ compensation purposes when a provider of
temporary workers furnishes a worker to a client that controlled the details of the
work at the time the worker was injured and there was no agreement between the
provider of temporary workers and the client regarding workers’ compensation
coverage.” 111 S.W.3d at 144 (emphasis added). The court expressly recognized,
however, that some Texas courts of appeals have held that where there was a contract
between a staffing company and its client regarding workers’ compensation, “the
client company is considered to be the employer for purposes of the exclusive remedy
provision of the workers’ compensation law . . . .” Id. One of the courts of appeals
so holding and cited by the supreme court in Alvarado was this Court. Garza v. Excel
Logistics, Inc., 100 S.W.3d 280, 287-88 (Tex. App.—Houston [1st Dist.] 2002, pet.
granted January 30, 2004) (holding that, where contract between staffing company
and client company did not directly address right to control employee, but did provide
that cost of workers’ compensation insurance would be borne by client company,
right-to-control doctrine, rather than contract, controlled disposition of issue). 
          Here, as in Garza, there is an agreement between SkillMaster, the provider of
temporary workers, and TieTek, its client, which expressly provides that “SkillMaster
shall maintain at its expense: (a) Workers’ Compensation and Employer’s Liability
Insurance. . . .” The agreement also provides, however, that the rates for the
performance of the services provided by Skillmaster employees will be billed to
TieTek at a given markup, including a 3% mark-up for worker’s compensation, and
that, if Skillmaster’s costs increase for those services, specifically including costs for
workman’s compensation insurance, the agreed upon mark-up will be raised to cover
the increased costs. Thus, TieTek is in the same position in this case as the client
company, Excel, in Garza. Therefore, just as Web could be found by a factfinder to
be an “employer” for the purpose of the TWCA’s exclusive remedy provision based
on its control over Alvarado in the absence of a contract regarding workers’
compensation, and Excel could be found to be an employer for workers’
compensation purposes based on its control over Garza despite the provision of
worker’s compensation by the staffing company, so too could TieTek be an
“employer” if it exercised sufficient control over the details of the work performed
by Mike Flores, even though workers’ compensation insurance was procured for
Flores by Skillmaster.
          Accordingly, we overrule appellants’ first point of error.
B.      Right-to-Control Test
          In their second point of error, appellants contend that the trial court erred in
granting TieTek’s motion for summary judgment because they properly pleaded and
offered evidence to show the existence of a material fact on TieTek’s status as a
“borrowing employer” under the right-to-control test. Specifically, appellants argue
that TieTek, pursuant to the contract between TieTek and Skillmaster, did not provide
sufficient control over Mike Flores for him to be classified as TieTek’s borrowed
servant. Rather, because the contract states that workers assigned to TieTek were
“solely the employees of Skillmaster,” it establishes that Skillmaster had control over
all its employees that were assigned to TieTek, including Mike Flores. 
          In response, TieTek contends that it was entitled to summary judgment as a
matter of law as either a borrowing employer of Mike Flores or, alternatively, a joint
employer with Skillmaster. TieTek argues that, because the contract did not contain
express language addressing who had the right to control, the contract is not
controlling. Rather, the facts and circumstances of Mike Flores’s employment should
determine if TieTek qualifies as an employer under the common-law right-to-control
test. TieTek argues that Mike Flores was supervised on a day-to-day basis by TieTek
and specially trained for the work he was to perform by TieTek, not Skillmaster. 
          Texas has long recognized that a general employee of one employer may
become the borrowed servant of another, special employer. Sparger v. Worley Hosp.,
Inc., 547 S.W.2d 582, 583 (Tex. 1977); Garza, 100 S.W.3d at 284. The borrowed
servant doctrine is implicated when the general employer loans or supplies an
employee to another, who is then termed the special or borrowing employer. 
Rodriguez v. Martin Landscape Mgmt., Inc., 882 S.W.2d 602, 604 (Tex.
App.—Houston [1st Dist.] 1994, no writ). Whether a general employee of one
employer has become the borrowed employee of another “employer” hinges on
whether the other special employer has the right to direct and control the employee
with respect to the details of the particular work at issue. See St. Joseph Hosp. v.
Wolff, 94 S.W.3d 513, 537 (Tex. 2002) (plurality opinion). The test is whether the
borrowing employer has the right to control the progress, details, and methods of
operations of the work. Limestone Prods. Distrib., Inc. v. McNamara, 71 S.W.3d
308, 312 (Tex. 2002); Farrell v. Greater Houston Transp. Co., 908 S.W.2d 1, 3 (Tex.
App.—Houston [1st Dist.] 1995, writ denied). The borrowing employer must control
not merely the end sought to be accomplished, but also the means and details of its
accomplishment. Thompson v. Travelers Indem. Co., 789 S.W.2d 277, 278 (Tex.
1990). A contract between two employers providing that one shall have the right to
control certain employees is a factor to be considered, but is not controlling, in
determination of whether employee of one employer had become the borrowed
servant of another employer. Exxon Corp. v. Perez, 842 S.W.2d 629, 630 (Tex.
1992); see Garza, 100 S.W.3d at 285; cf. Hoffman v. Trininty Indus., Inc., 979 S.W.2d
88, 90 (Tex. App.—Beaumont 1998, pet. dism’d by agr.) (fact issue raised by conflict
between contract between staffing company and client company, which provided that
staffing company would have “complete and sole control” over its employees and
actual control exercised by client company precluded summary judgment in favor of
client company on applicability of dual-employer theory for purposes of workers’
compensation).
          Here, the contract does not establish expressly who has the right to control
workers assigned by Skillmaster to TieTek. The contract does indicate that
Skillmaster maintained many responsibilities toward its employees even after they are
assigned to TieTek:
When requested, Skillmaster shall recruit, interview, evaluate, test,
select, hire and train the persons who shall provide Services hereunder.
. . . Skillmaster shall have sole responsibility to counsel, discipline,
review, evaluate, set the pay rates of, and terminate its employees
assigned to TieTek. Skillmaster assumes full responsibility for all
contributions, taxes and assessments with respect to its employees under
all applicable federal, state and local laws (including withholding from
employees wages where required). Skillmaster further agrees that it will
comply with all other applicable federal, state or local laws or
regulations applicable to Skillmaster as an employer regarding
compensation, hours of work or other conditions of employment.
 
Although TieTek had workers’ compensation insurance for its own employees,
Skillmaster paid for the workers’ compensation insurance that covered employees
even after they were assigned to TieTek “at its own expense,” although it passed
those costs on to TieTek. Skillmaster also enforced a code of conduct that covered
employees even after they were assigned to work at its clients’ facilities like
TieTek’s. In addition, Skillmaster performed ongoing safety services to its clients
pursuant to the contract, which included an initial site inspection, walk-throughs and
hazard assessments of the facilities, OSHA compliance inspections at the client’s
premises, and preliminary safety training before the employees report to the client’s
premises. Nevertheless, the performance of these tasks by Skillmaster does not
demonstrate Skillmaster’s control over the workers assigned to TieTek so much as
Skillmaster’s exercise of responsibilities owed to its client, TieTek under the contract.
          As appellants concede, the contract between Skillmaster and TieTek is not
specific as to who shall control the day-to-day activities of Skillmaster employees
assigned to TieTek. When the contract between the employers contains no provision
for right to control, right to control is “necessarily determined as an inference from
such facts and circumstances as the nature of the general project, the nature of the
work to be performed by the machinery and employees furnished, length of the
special employment, the type of machinery furnished, acts representing an exercise
of actual control, the right to substitute another operator of the machine, etc.” 
Producers Chem. Co. v. McKay, 366 S.W.2d 220, 226 (Tex. 1963).
          TieTek’s deposition testimony demonstrates that TieTek exercised control over
Mike Flores’s actions. The deposition of Henry Sullivan, TieTek’s president,
indicates that two TieTek employees, foreman Mike Cline and plant manager Kreg
Inman, were personally responsible for providing hands-on training to Mike Flores
and for ensuring he could properly operate each piece of machinery to which he was
assigned, including the molding machine upon which he worked on the date of the
accident. Sullivan further noted that, although Skillmaster’s employees came to
TieTek with general safety training, TieTek assumed that the employees came not
knowing anything about the machines actually used in the plant. In an affidavit given
after his deposition, Sullivan wrote that Mike Flores “was directly supervised by
TieTek employees,” as were all Skillmaster employees assigned to TieTek.
          Similarly, a former safety consultant for Skillmaster, Jewell English, who
worked at Skillmaster at the time of Mike Flores’s death, discussed Skillmaster’s
control over employees in his deposition testimony: 
As far as . . . his [a Skillmaster employee assigned to work for a client]
day-to-day activity, the client is responsible for his day-to-day activities. 
Skillmaster payrolls, you know, we’ll actually – the check will say
Skillmaster, but his day-to-day activities are monitored by the clients. 
Skillmaster really doesn’t have a say in what the employee is doing on
a minute-to-minute or hour-to-hour basis. 
 
English also revealed that, although Skillmaster technically had the authority to fire
the employees it assigned to TieTek, the authority was not used unless a client
requested that Skillmaster fire an employee based on the employee’s performance at
the client’s facility or an employee violated a Skillmaster policy. English testified
that TieTek employees and Skillmaster-assigned workers “worked together” side by
side, but it was up to the client, TieTek, to determine which employees were to be
assigned to do what work at the facility. Furthermore, Michael Cline, a shift supervisor for TieTek, provided deposition
testimony that Skillmaster did not have any management personnel on-site at the
TieTek facility on a day-to-day basis. Cline answered that providing such
management personnel was TieTek’s responsibility, not Skillmaster’s. In fact, part
of Cline’s job was to provide adequate training, ensure awareness of safety
procedures, and to provide tools for the proper operation of machinery at the TieTek
plant. Although TieTek did not pay the wages of Skillmaster-assigned workers, Cline
dealt with issues of vacation, time off, attendance, and discipline for all workers on
his shift, regardless of whether they were assigned by Skillmaster or not. TieTek’s
plant manager, Kreg Inman, agreed that “TieTek’s was responsible for assigning
[Skillmaster-assigned workers] to their particular jobs, for training those individuals
in operational training as well as safety training, and for discipline and terminating
those individuals.”
          Indulging every reasonable inference in appellants’ favor, the evidence
demonstrates no genuine issue as to the fact that TieTek controlled the details of
Mike Flores’s work and thus satisfied, as a matter of law, the requirement to prove
that Mike Flores was the borrowed servant of TieTek. Hence, Tie Tek is an employer
for purposes of asserting the exclusive remedy provision of the TWCA.


 
Accordingly, we overrule appellants’ second point of error.
C.      Statutory Definition of Employer
          In their final point of error, appellants contend that the trial court erred in
granting TieTek’s motion for summary judgment because they properly pleaded and
offered evidence to show the existence of a material fact on TieTek’s “employer”
status under the TWCA statutory definition. Because we have determined that Flores
was a borrowed servant of TieTek under the right-to-control test, we need not reach
this remaining point of error.
CONCLUSION
          Because the trial court did not err in granting summary judgment, we affirm the
trial court’s judgment.
 
 
                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Keyes and Alcala.