# IN THE SUPREME COURT OF TEXAS

═══════════

No. 19-0282

═══════════

WASTE MANAGEMENT OF TEXAS, INC. AND RIGOBERTO ZELAYA, PETITIONERS,

v.

ROBERT STEVENSON, RESPONDENT

═══════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

═══════════════════════════════════════

JUSTICE BOYD, concurring.

Truth be told, we have a tendency to overcomplicate the law. Unfortunately, courts and parties in future cases pay the price for the resulting inconsistencies. Today, inconsistent with our well-established precedent, the Court creates a new and different test for determining whether a worker hired by a staffing agency and assigned to the agency's client company qualifies as an employee of the client company under the Workers' Compensation Act. Specifically, the Court holds that, in workers'-compensation cases, a contract that expressly addresses the nature of the employee's status is merely "a factor to be considered," and even then, only if actual control is "a controverted issue." *Ante* at ___. This test, the Court asserts, is different than the test for determining employee status for other purposes under the common law, such as vicarious liability. *Ante* at ___.

Neither the Act nor our precedent establishes or supports the Court's creation of a new test for workers'-compensation cases, and the facts of this case do not require the Court to announce

one. The test for determining whether a worker is an employee rather than an independent contractor is as well-established as it is straight forward: it is simply "whether the employer has the right to control the progress, details, and methods of operations of the employee's work." *Thompson v. Travelers Indem. Co. of R.I.*, 789 S.W.2d 277, 278 (Tex. 1990).[1] This test determines both whether the worker qualifies as an employee under the Workers' Compensation Act, *id.*, and whether the employer is vicariously liable for the worker's wrongful conduct under the common law, *see, e.g.*, *Duenez*, 237 S.W.3d at 686; *Wolff*, 94 S.W.3d at 542.

What matters under this test is whether the employer has a *contractual right* to control the work, not whether the employer actually exercised control over the work. *Love*, 380 S.W.2d at 585 ("[O]n the question of control, the test is not the exercise thereof, but the right to exercise such

---

[1] *See also Nettles v. GTECH Corp.*, 606 S.W.3d 726, 732 n.3 (Tex. 2020) (noting the "control-based . . . test for distinguishing between independent contractors and employees"); *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 132 (Tex. 2018) ("[T]he employer's overall right to control the details of the work is what principally distinguishes an employee from an independent contractor."); *Harris Cnty. Appraisal Dist. v. Tex. Workforce Comm'n*, 519 S.W.3d 113, 121 (Tex. 2017) (explaining test for determining employee status is "whether the employer has the right to control the progress, details, and methods of operations of the work"); *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 686 (Tex. 2007) (explaining that vicarious liability "is based on the principal's control or right to control the agent's actions undertaken to further the principal's objectives"); *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542 (Tex. 2002) ("[I]n the employment context, it is the right of control that commonly justifies imposing liability on the employer for the actions of the employee. Indeed, it is the absence of that right of control that commonly distinguishes between an employee and an independent contractor and negates vicarious liability for the actions of the latter."); *Tex. Workers' Comp. Ins. Fund v. DEL Indus., Inc.*, 35 S.W.3d 591, 595 (Tex. 2000) (explaining that, for purposes of workers' compensation, a worker's employee status is determined "under the right-of-control test"); *State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 627 (Tex. 1998) ("In determining whether a principal is vicariously responsible for the conduct of an agent, the key question is whether the principal has the right to control the agent with respect to the details of that conduct."); *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 290 (Tex. 1996) ("[T]he right to control remains the 'supreme test' for whether the [employer-employee] relationship exists."); *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 586 (Tex. 1964) ("[T]he test of right of control, . . . according to our decisions and most of the modern cases, is used as the supreme test."); *Producers Chem. Co. v. McKay*, 366 S.W.2d 220, 225 (Tex. 1963) ("Whether general employees of one employer have, in a given situation, become special or borrowed employees of another employer . . . rests in right of control of the manner in which the employees perform the services necessary to accomplishment of their ultimate obligation."); *Halliburton v. Tex. Indem. Ins. Co.*, 213 S.W.2d 677, 680 (Tex. 1948) ("The supreme test in determining whether one is an employee or an independent contractor, according to our decisions and most of the modern cases, is the test with respect to the right of control.").

control.") (quoting *King v. Galloway*, 284 S.W. 942, 944 (Tex. Comm'n App. 1926)). The test focuses on the employer's "*contractual* arrangement with the [worker], either expressed or implied[,] which vests in him the *right* to control the details of the work." *Id.* at 589 (emphases added).

Under the right-to-control test, however, evidence of actual control is not irrelevant. When no contract expressly addresses the employer's right to control the details of the worker's work, a party can establish the right to control with evidence of an implied agreement giving the employer that right. *See Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002). Evidence that the employer actually exercised control over the details of the work may establish such an implied agreement. *See Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex. 1999) (per curiam). In the absence of an express contract addressing the issue, evidence of actual control "may be the best evidence available to show the actual terms of the contract." *Love*, 380 S.W.2d at 590. Such evidence may establish that the employer is vicariously liable for the worker's conduct, *Producers Chem.*, 366 S.W.2d at 226, or that the worker is an employee for workers'-compensation purposes, *City of Bellaire v. Johnson*, 400 S.W.3d 922, 923–24 (Tex. 2013) (per curiam). But in both types of cases, the *right to* control is the determining factor, even though the "right of control is necessarily determined as an inference from such facts and circumstances . . . representing an exercise of actual control." *Producers Chem.*, 366 S.W.2d at 226.

When a contract expressly addresses the right to control, the answer is "relatively simple." *Id.* Because the test requires the *contractual right* to control, we must always start with the contract. But if the contract negates the right to control and the evidence establishes actual control, that evidence may create a fact issue regarding the employer's right to control "even though the

3

contract did not so provide." *Elder v. Aetna Cas. & Sur. Co.*, 236 S.W.2d 611, 613 (Tex. 1951). Because courts will not "enforce fictitious contracts," a written agreement providing that a worker is not an employee "will not prevent the existence of a[n] [employer-employee] relationship when such contract is a mere sham or a cloak designed to conceal the true legal relationship between the parties." *Love*, 380 S.W.2d at 590.

In other words, when an express contract provides that a worker is not an employee or deprives the employer of the right to control, the contract will control unless the evidence establishes that "*the true operating agreement* was one which vested the right of control in the alleged [employer]." *Id.* at 592 (emphasis added). Despite the contract expressly negating the right to control, such a right may be established when the evidence of actual control is "so persistent and the acquiescence therein so pronounced as to raise an inference that at the time of the act or omission giving rise to liability, the parties by implied consent and acquiescence had agreed that the principal might have the right to control the details of the work." *Id.* But "[u]nder such circumstances, the exercise of control is evidentiary only" and "is not an ultimate test of the [employer-employee] relationship." *Id.* Instead, "[t]he true test remains the *right* of control." *Id.* (emphasis added). To hold otherwise "would be to practically destroy contract rights and relationships based thereon." *Id.*

This contractual-right-to-control test applies equally in the so-called dual-employment context. The cases on which the Court relies do not support the Court's suggestion that, in dual-employment cases, we ignore the express contract and look solely for evidence of actual control. The unique issue we addressed in our dual-employment cases was whether it was possible for *both* a staffing agency and its client company to qualify as a worker's "employer" under the Workers'

4

Compensation Act, even though the common law had not previously recognized that possibility. *See Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 475–76 (Tex. 2005); *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 145–46 (Tex. 2003).[2] We did not hold in those cases, or even suggest, that a contract that expressly addressed the issue is irrelevant to whether the employer had a *right* to control. In fact, those cases did not involve a contract that expressly addressed whether the client company had a right to control the worker. *Wingfoot*, 111 S.W.3d at 135; *see Garza v. Excel Logistics, Inc.*, 100 S.W.3d 280, 285 (Tex. App.—Houston [1st Dist.] 2002), *aff'd in part, rev'd in part*, 161 S.W.3d 473 (Tex. 2005). Yet the Court today relies on these cases—which analyzed evidence of actual control *because* there was no contract addressing the right to control—to hold that we must look at evidence of actual control and ignore the contract in dual-employment cases. *Ante* at ___.

Nor have we ever held, in *Perez* or any other case, that in workers'-compensation cases a contract expressly addressing the issue is merely a "factor to be considered," and only if the evidence of actual control is disputed. *See Exxon Corp. v. Perez*, 842 S.W.2d 629 (Tex. 1992) (per curiam). *Perez* presented the issue of whether the Workers' Compensation Act barred a worker's common-law claims on the ground that he was Exxon's "borrowed" employee. *Id.* at 630. Like

---

[2] We specifically stated in *Wingfoot*,

> We think it prudent to emphasize that we are deciding today only whether there may be two employers for workers' compensation purposes when a provider of temporary workers furnishes a worker to a client that controlled the details of the work at the time the worker was injured and there was no agreement between the provider of temporary workers and the client regarding workers' compensation coverage.

111 S.W.3d at 144. And we confirmed in *Garza* that the "*only question*" at issue in *Wingfoot* "was whether the temporary employment agency that was [the worker's] general employer could also be an 'employer' for purposes of the [Act's] exclusive remedy provision." *Garza*, 161 S.W.3d at 476 (emphasis added).

this case (but unlike *Wingfoot* and *Garza*), the parties in *Perez* expressly agreed that Exxon would not have the right to control the employee. *See id.* (noting evidence of "Exxon's right of control" conflicted with contract language). As the Court asserts today, we said in *Perez* that a "contract between two employers providing that one shall have the right of control over certain employees is a factor to be considered, but it is not controlling." *Id.* (citing *Producers Chem.*, 366 S.W.2d at 226). But in the very next sentence, we quoted *Love* to explain what we meant by that statement: "This court has held that a contract will not prevent the existence of a[n] [employer-employee] relationship where the contract is 'a mere sham or cloak designed to conceal the true legal relationship between the parties.'" *Id.* (quoting *Love*, 380 S.W.2d at 590).

*Perez* simply confirmed that a contract that expressly denies a right to control may be overcome by conflicting evidence of actual control that was so "persistent" and "pronounced" that it establishes the contract was a sham or the parties impliedly modified it by their conduct. *Id.*; *Love*, 380 S.W.2d at 592. It did not establish a new standard, but instead simply cited and applied what we had held in *Love*.

In the absence of conclusive, "persistent" evidence of actual control that the worker acquiesced to, ignoring the contract and focusing solely on evidence of actual control "would be to practically destroy contract rights and relationships based thereon." *Love*, 380 S.W.2d at 592. Our long-standing and oft-repeated commitment to upholding the freedom of contract demands respect for the parties' express agreement, unless the evidence establishes that the agreement was a sham or was later modified. *See Energy Transfer Partners, L.P. v. Enter. Prods. Partners, L.P.*, 593 S.W.3d 732, 738 (Tex. 2020) (explaining our "well-developed body of common law that

'strongly favors parties' freedom of contract,'" which we "reinforce . . . virtually every Court Term") (quoting *Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 912 (Tex. 2007)).

In this case, the contract that governed Taylor Smith's assignment of Robert Stevenson to work for Waste Management provided that Taylor Smith was "solely responsible" for all obligations as Stevenson's employer, and it expressly stated that Stevenson was an "independent contractor" and not an employee of Waste Management. But as the Court explains, the evidence conclusively establishes that Waste Management actually controlled Stevenson's work, "both as a general matter and in the specific circumstances of his accident." *Ante* at ___. I agree. Normally, where a contract expressly addresses the issue, conclusive evidence of an employer's actual control over a worker's work merely creates a fact issue on the right to control, for the jury to decide. *See Perez*, 842 S.W.2d at 630 (holding court of appeals erred by holding that contract was conclusive and remanding case to the trial court for a new trial); *Love*, 380 S.W.2d at 592 (holding trial court erred by asking jury to decide only whether the company exercised actual control); *Elder*, 236 S.W.2d at 614 (holding that trial court erred by refusing to submit the right-to-control issue to the jury).

But here, where the undisputed evidence conclusively establishes that Waste Management completely and comprehensively controlled Stevenson's work on the garbage truck and no evidence indicates any actual control by Taylor Smith, I conclude that Waste Management's actual control was so "persistent," and Stevenson's "acquiescence therein [was] so pronounced," as to conclusively establish as a matter of law that either the contract was a sham or the parties agreed to modify it to give Waste Management the "*right to* control the details of the work." *Love*, 380 S.W.2d at 592 (emphasis added). I thus agree with the Court's holding that the evidence

7

conclusively establishes that Stevenson was Waste Management's employee under the Workers' Compensation Act. But I do so because the evidence in this summary-judgment record compels that result, not because the law recognizes a different test for dual-employment cases or makes the express contract irrelevant. I thus respectfully concur in the Court's judgment, without joining its opinion.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: April 30, 2021