Affirmed and Majority, Concurring, and Dissenting Opinions filed January
31, 2007








Affirmed
and Majority, Concurring, and Dissenting Opinions filed January 31, 2007.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-04-00183-CV

_______________

 

GUILLERMINA MOSQUEDA, Appellant

 

V.

 

G & H DIVERSIFIED MFG., INC., EDWARD KASH, KASH
FAMILY PARTNERSHIP and KASH HOLDINGS L.L.C., Appellees

                                                                                                                                               


On Appeal from 281st District Court

Harris County, Texas

Trial Court Cause No. 02‑14362

                                                                                                                                               


 

M A J O R I T Y   O P I N I O N

 

In this personal injury case,
Guillermina Mosqueda appeals a judgment notwithstanding the verdict (AJNOV@) in favor of G & H Diversified
MFG., Inc. (AG & H@) and a summary judgment granted in favor of Edward Kash,
Kash Family Partnership, and Kash Holdings L.L.C. (collectively, the AKashes@). 

                              I.  Fact ual And Procedural Background








Edward Kash is the president of G
& H, a manufacturing firm.  Kash formed Kash Holdings, L.L.C. (AKash Holdings@) and Kash Family Partnership, L.P. (AKFP@).  G & H used various temporary
employment agencies, including Pacesetter Personnel Service, Inc. (APacesetter@) and Link Staffing (ALink@), to supply skilled and unskilled
laborers. Guillermina Mosqueda, an unskilled laborer, was initially recruited
or employed by Pacesetter.  On January 31, 2001, she sustained bodily injury
while operating or cleaning a machine on the premises of G & H.  Felix
Gonzales, a G & H employee, was supervising Mosqueda=s work when she was injured.

Pacesetter generated daily time
tickets reflecting the number and identity of temporary employees furnished to
G & H.  The time ticket for appellant=s date of injury was not offered or
admitted into evidence. However, the following language pertinent to our
inquiry appears on the back of time tickets that were admitted into evidence:

                                                    
AConditions of Service@:

Customer designated on the front hereof confirms its
agreement with The Temporary Personnel Service (AService@) designated on the front hereof as to the following
terms and conditions of services rendered by the Service now or in the
future.

*          *          *

3. The Service is the employer of personnel furnished
to Customer and Customer agrees to discuss all matters concerning their
employment with the Service.  The Service . . . is responsible for . . . the
maintenance of Worker=s Compensation Insurance.  Customer is the worksite
employer with authority to direct the work to be done, . . . and
supervise the employees.

*          *          *

8. Customer agrees that it will
not permit or assign the Service employees to perform any work which would
expose them to any unreasonably dangerous working conditions.








(emphasis added).  Mosqueda received
statutory workers= compensation benefits from Pacesetter=s insurance carrier.  Thereafter, she
sued G & H and the Kashes, asserting claims for premises liability,
negligence, products liability, gross negligence, and breach of contract. She
also alleged single business enterprise, joint business enterprise, and alter
ego.  The trial court granted the Kashes= motions for summary judgment,
concluding there was no genuine issue of material fact to support any of
Mosqueda=s claims against those persons or
entities.  At trial, G & H contended it was entitled to immunity from
liability under the exclusive remedy provisions of the Workers= Compensation Act because Mosqueda
was its Aborrowed employee.@ The trial court submitted and the
jury answered the following question:

Question No. 1

 

On the occasion in question, was Guillermina Mosqueda
acting as a borrowed employee of G & H Diversified Manufacturing, L.P.?

 

One who would otherwise be in the general employment
of one employer is a Aborrowed employee@ of
another employer if such other employer or its agents have the right to direct
and control the details of the particular work in question.

 

Answer AYes@ or ANo.@

 

Answer:          No

 

The trial court granted G & H=s motion for JNOV, in which G & H
asserted that it was entitled to judgment as a matter of law based on its
affirmative defense of the workers= compensation bar. 

                                                       II.  Issues Presented

In Mosqueda=s first six issues, she challenges
the JNOV on the following grounds: (1) G & H failed to establish, as a
matter of law, formation of a written contract that gave G & H the right to
control Mosqueda at the time of her injury; (2) Mosqueda presented some
evidence that there was no contract which controlled her status as an employee;
(3) there was some evidence that G & H did not have the right to control
details of the particular work in question; (4) the common law right of control
test does not apply because the Apurported@ written agreement denominates
Pacesetter as the employer responsible for providing workers= compensation insurance; (5) there
was some evidence that Link Staffing was controlling Mosqueda=s work when she sustained injury; 
and, (6) G & H did not establish that Mosqueda was a covered Aemployee@ and that it was an Aemployer@ under the Texas Worker=s Compensation Act. 

                                                                              








III. Standard of Review

 

In reviewing the trial court=s judgment notwithstanding the
verdict, we consider the evidence in the light most favorable to the challenged
finding and indulge every reasonable inference that would support it.  See
City of Keller v. Wilson, 168 S.W.3d 802, 821 (Tex. 2005). We must credit
favorable evidence if a reasonable factfinder could do so and disregard
contrary evidence unless a reasonable factfinder could not.  See id. at
827.  However, we cannot disregard undisputed evidence that allows one logical
inference.  See id. at 814.  Moreover, incompetent evidence is legally
insufficient to support a judgment, even if admitted without objection.  See
id. at 812.  Evidence that might be Asome evidence@ when considered
in isolation is nevertheless rendered Ano evidence@ when contrary
evidence shows it to be incompetent. Id.  For example, an employee=s testimony that he was in the course
and scope of his employment is legally insufficient to support a verdict
against his employer if the evidence shows that legal conclusion to be
incompetent.  Minyard Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 579
(Tex. 2002). 

If this court finds no competent
evidence to support the verdict, then we review the record to determine if G
& H established the contrary position as a matter of law.[1]  
We will affirm the JNOV if there is no evidence to support an issue, or
conversely, the evidence establishes an issue as a matter of law.   See
Exxon Corp. v. Quinn, 726 S.W. 2d 17, 19 (Tex. 1987).  When a
movant for JNOV challenges an adverse finding on an affirmative defense, it
must conclusively establish all vital facts in support of that defense. Dow
Chemical Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001).








                                                                 IV.  Analysis

A.        Does
the evidence conclusively prove G & H and Pacesetter agreed that the
Conditions of Service would govern Mosqueda=s work at the time she was injured?

Under her first issue, Mosqueda
asserts the following:

(1)       G & H did not conclusively prove G &
H and Pacesetter agreed that the Conditions of Service would govern Mosqueda=s work at the time she was injured.

(2)       The contract that purportedly imposed the
Conditions of Service on Mosqueda=s
work had expired before Mosqueda was injured.

(3)       G
& H=s breach of the alleged contract
prevents its enforcement.  

As to the formation of the contract
in question, Kash testified that Gonzales, a G & H supervisor, signed the
time ticket for the week before Mosqueda was injured.  This time ticket was offered and
admitted into evidence without objection.  Right above Gonzales=s signature on behalf of the customer
G & H, the time ticket states:

THIS TIME TICKET AND THE SERVICES PROVIDED HEREUNDER
ARE SUBJECT TO THE TERMS AND CONDITIONS ON THE REVERSE SIDE.

The reverse side states the
following:

Customer designated on the front hereof confirms its
agreement with the Temporary Personnel Service (AService@) designated on the front hereof as to the following terms and
conditions of services rendered by the Service now or in the future.

[Conditions of Service]

The undisputed evidence at trial
shows that Gonzales signed this time ticket, which, by its unambiguous terms,
sets forth the agreement between G & H and Pacesetter as to the right to
direct and control the details of the Mosqueda=s work at the time she was injured.[2]









Mosqueda argues
that the time ticket that was admitted into evidence is not an enforceable
contract because Jay Graves, the G & H operations manager, testified that
the Conditions of Service were binding on G & H only by signing the
document and because Graves did not sign the time ticket in question.  However,
in this regard Graves simply testified that he understood the Conditions of
Service were G & H=s agreement with Pacesetter only if G
& H signed the time ticket. Since our analysis is based on a time ticket
signed by Gonzales on behalf of G & H, Graves=s testimony does
not present more than a scintilla of evidence that G & H did not agree to
the Conditions of Service.

Mosqueda also asserts
that Pacesetter=s sales representative, Brenda Able,
testified she did not negotiate a written contract with G & H.  Able opined
a legal conclusion that there never was a contract, only Aan agreement for
fee rate@ which Pacesetter
provides to all customers.  Brenda Able=s testimony is
conclusory and must be weighed against undisputed facts.  Mosqueda=s signature
appears on one of the time tickets.  Mosqueda did not dispute the fact that
Pacesetter and G & H conducted business by issuing and signing time
tickets.  Accordingly, there is one logical inference from this evidence; when
contrasted with  the undisputable fact that the parties executed time tickets
with AConditions of
Service@ language on the
back, the conclusory testimony of Brenda Able must be disregarded and amounts 
to no evidence.  Minyard Food Stores, Inc., 80 S.W.3d at 579.         

Mosqueda further
argued that the time ticket signed by Gonzales was not effective on the date
she was injured.  This argument lacks merit.  We find there is no ambiguity in
the Anow and in the future@ language under
the Conditions of Service.  Accordingly, this court concludes that Pacesetter
and G & H intended the agreement to govern their relationship during all
material times.








Next, Mosqueda
contends the Apurported@ contract is not
enforceable because G & H breached the AConditions of
Service@ by assigning
Mosqueda to unreasonably hazardous working conditions.[3]
Mosqueda did not submit a jury question on this point. Consequently, Mosqueda
has waived error, if any, because the evidence does not establish as a matter
of law that G & H breached the contract in this manner.  See, Tex. R. Civ. P.  274  and Tex. R. App. P. 33 (a) (1) (A) (B). 
Even if Mosqueda=s argument were considered on the merits,
it is unavailing.  Mosqueda relies on the general proposition that a party to a
contract is discharged or excused from further performance if the other party
commits a material breach of that contract.  See Mustang Pipeline Co., Inc.
v. Driver Pipeline Co., Inc., 134 S.W.3d 195, 196 (Tex. 2004). 
Applying this doctrine, if the jury found that G & H breached the contract,
Pacesetter would be excused from a subsequent breach.  None of the cases cited by Mosqueda
are factually similar and the relevant legal doctrine she raises merely
pertains to traditional rights and remedies between two parties when one party
breaches the contract.  Mosqueda was not a party to the agreement. This
contract principle is not relevant to our disposition.  








Under the unambiguous AConditions of Service@ language in the contract, G & H
had the right to direct and control the details of Mosqueda=s work.  There is no language in the
agreement either plainly modifying or limiting G & H=s exercise of that right.  Moreover, if G & H assigned
Mosqueda to perform work which would expose her to unreasonably dangerous
working conditions, it may have breached its promise to Pacesetter, but it was
merely exercising its contractual right of control.[4]  See Wingfoot
Enters. v. Alvarado, 111 S.W.3d 134, 139 (Tex. 2003) (holding that
temporary employee who operated an industrial machine in violation of temporary
employment agency=s policy could still be borrowed employee
of client company and employee acting in the course and scope of employment
with the temporary employment agency, even though policy regarding operation of
machinery had been violated).  

Having rejected all of Mosqueda=s arguments under her first issue, we
overrule that issue.

B.        Is
there a more than a scintilla of evidence supporting Mosqueda=s assertion that no contract governed
her status as an employee of G & H?

Under Mosqueda=s second issue, the only argument
that she asserts that is not asserted under other issues is that, as a matter
of law, time tickets cannot be a contract.  The only case Mosqueda cites in
this regard does not support her argument. See Cannan v. Absolute
Demolition, Inc., No. 09-03-353-CV, 2004 WL 1366043, at *1 (Tex. App.CBeaumont 2004, no pet.) (stating that
court had serious doubts that work ticket was a contract and that it assigned
the right to control to one of the parties but stating that court need not
address these issues to affirm the trial court=s judgment and affirming on a
different basis).  This argument lacks merit.  See, e.g., Manges v. Mustang
Oil Tool Co., Inc., 682 S.W.2d 503, 505 (Tex. App.CCorpus Christi  1982, no writ)
(enforcing terms of delivery ticket as part of written contract).  Accordingly,
we overrule Mosqueda=s second issue.

C.        Is
there more than a scintilla of evidence supporting Mosqueda=s assertion that G & H did not
have the right to direct and control the details of Mosqueda=s particular work at the time she was
injured?








In support of her third and fourth
issues, Mosqueda cites Exxon Corp. v. Perez.  See 842 S.W.2d 629,
630 (Tex. 1992).  She contends her burden is to show there is more than a
scintilla of evidence that G & H did not have the right to direct and
control the details of her particular work at the time she was injured.  There
is a conflict among courts relative to disposition of contractual
right-of-control issues.  Compare Alice Leasing Corp. v. Castillo, 53
S.W.3d 433, 440B41 (Tex. App.CSan Antonio 2001, pet. denied) (construing Perez to
hold that a contractual right to direct and control the details of a person=s work when he was injured is not
determinative of the Aborrowed employee@ inquiry if there is evidence raising
a fact issue as to whether that part of the contract is a sham or whether the
parties continually disregarded the provisions of the contract regarding the
right to control and declining to construe Perez as holding that a
contract regarding the right to direct and control is always just one factor to
be considered in conjunction with all of the other circumstances); and
Barnes v. Calgon Corp., 872 F.Supp. 349, 352 (E.D. Tex. 1994) (same as Castillo)
with Hoffman v. Trinity Indus., Inc. 979 S.W.2d 88, 91 (Tex. App.CBeaumont 1998, pet. dism=d) (stating that, under Perez,
contractual right to direct and control is not determinative and is just a factor
to be considered along with all of the other circumstances).  Although the
parties have briefed this legal issue, we need not decide the case on this
basis because, under the applicable standard of review, we conclude that the
evidence conclusively proved that G & H had the right to direct and control
the details of Mosqueda=s particular work at the time she was injured, even if the
Conditions of Service are only a factor to be considered along with all of the
other circumstances.[5] 








In this regard, Mosqueda does not
cite any evidence allegedly showing that G & H lacked this right to direct
and control; rather, she cites her own testimony that she worked for Pacesetter
and that Pacesetter sent her to work at G & H=s facility.  However, this evidence
does not raise a fact issue as to Mosqueda=s status as G & H=s alleged borrowed servant. The
Conditions of Service state that Pacesetter is Mosqueda=s employer and that Pacesetter will
maintain workers= compensation insurance covering Mosqueda. The Conditions of
Service also state that G & H is the Aworksite employer@ and has the right to direct and
supervise Mosqueda=s work.  An employee may have more than one employer within
the meaning of the Texas Workers= Compensation Act, and each employer
may raise the exclusive remedy provision as a bar to the employee=s claims.  Western Steel Co. v.
Altenburg, 206 S.W.3d 121, 123 (Tex. 2006); accord Wingfoot
Enters. v. Alvarado, 111 S.W.3d 134, 134B35 (Tex. 2003); Brown v. Aztec Rig
Eqip., Inc., 921 S.W.3d 835, 843B44  (Tex. App.CHouston [14th Dist.] 1996, writ
denied). 

Mosqueda also contends the contract
did not give G & H the right to control the particular work that Mosqeda
was doing when she was injured because G & H did not have the right to
instruct Mosqueda to operate industrial machinery.  However, this argument is a
reiteration of one of Mosqueda=s arguments under her first issue.  This argument fails for
the reasons stated above.  See ante at pp. 7B8.  

Mosqueda further
argues that an employer/employee relationship was not established with G &
H because she Awas not knowledgeable about nor charged with knowledge
of the lending agreement.@  In support of this argument, Mosqueda
cites Guerrero v. Standard Alloys Mfg. Company, 566 S.W.2d 100 (Tex.
Civ. App.CBeaumont 1978, writ ref=d n.r.e.), which
appears to recognize a rule that the employee must consent to or be charged
with knowledge of the lending agreement.  In that case, the evidence showed
that the general employer was on the job site several times a week, including
the day of the accident, and had met with the workers to tell them how Ato work faster and
better.@  Id. at
102.  The injured worker spoke no English, and the supervisors provided no
direction because they could not speak  Spanish.  The general employer
allegedly informed the workers they Awere working for
him.@  Id.  The
court in Guerrero stated that Ain order to
establish an employer‑employee relationship between an employee and a
borrowing employer, the employee must know or be charged with knowledge of the
lending agreement.@  Id. at 102. Even if this were a
correct statement of law, our disposition of this case would not be affected. 
The record demonstrates Mosqueda=s awareness that
she was loaned by Pacesetter.  Apparently, all employees furnished by
Pacesetter, regularly signed time tickets acknowledging their status as
temporary employees of G & H. Mosqueda=s signature or
initials appears on one of the time tickets that was admitted into evidence.








There is no evidence that conflicts
with G & H=s right to direct and control as expressed in the Conditions of Service. 
We conclude that there is no competent evidence contradicting G & H=s contractual right to direct and
control the details of Mosqueda=s particular work at the time she was injured.  Accordingly,
we overrule Mosqueda=s third and fourth issues.

D.        Is
there competent evidence supporting Mosqueda=s contention that Link had the right
to direct and control the details of her work at the time she was injured?

Under her fifth issue, Mosqueda
asserts that there was more than a scintilla of evidence that another temporary
service agency, Link, had the right to direct and control the details of
Mosqueda=s work at the time she was injured. 
She bases this argument on her testimony regarding Nadia Campos and one
statement made by Felix Gonzales during his testimony.  Mosqueda testified
Campos did the following:

!         Along with Gonzales, Campos showed Mosqueda
how to do her first task at G & H, which was assembling parts.

!         If Mosqueda had questions or concerns about
her job, she would talk to Campos or Gonzales.

!         Campos told Mosqueda when it was time to take
her lunch break.

!         The day before the accident Gonzales and
Campos told Mosqueda for the first time to work on the multislide machine to
help the wire being fed into the multislide machine. They also told Mosqueda
(1) to get up occasionally to check that the machine was working correctly and
cutting the cable and (2) to clean the machine.  

!         On the day of the accident, the reason
Mosqueda=s hand was near moving parts on the multislide machine
was that she had been trying to clean off parts of the machine as Gonzales and
Campos had explained to her the day before.

!         After the machine injured Mosqueda=s thumb, she was taken to the hospital for surgery
under general anesthesia.  When she woke from the surgery, Campos was there.  

!         Gonzales and Campos were both giving Mosqueda
directions.  Although Campos was not Mosqueda=s supervisor, Gonzales told Mosqueda that if she needed something and
could not find him, to go to Campos.  

!         Campos worked with Gonzales, and Mosqueda believes Campos was Alike, his right hand.@








Mosqueda asserts that this evidence
raises a fact issue as to whether Campos, acting as a Link employee, was
exercising control over the details of Mosqueda=s work when Mosqueda was injured. 
Presuming for the sake of argument that Mosqueda=s testimony raised a fact issue as to
whether Campos, in part, had the right to direct and control the details of
Mosqueda=s work when Mosqueda was injured,
Mosqueda testified that Campos was like Felix Gonzales=s Aright hand.@  Therefore, Mosqueda=s own testimony showed that Campos
was acting as a G & H employee when she allegedly exercised control over
the details of Mosqueda=s work.  Mosqueda asserts Gonzales testified that Campos was
a Link  representative rather than a G & H employee.  However, in the
testimony upon which Mosqueda relies, Gonzales does not state that Campos was a
Link employee as opposed to a G & H employee; rather, he states that, when
Mosqueda was injured, Campos Awas temporary, also@ and that she was Awork[ing] for a temporary agency
named . . . L-I-N-K.@  This testimony indicates that Campos was another temporary
worker assigned to work under G & H=s direction, and it is consistent
with Mosqueda=s testimony that Campos worked with Gonzales as his Aright hand.@  Therefore, even if there were
evidence raising a fact issue as to whether Campos had the right to control the
details of Mosqueda=s work, there is no evidence raising a fact issue as to
whether Campos had this right to control as a representative of Link.
Accordingly, we overrule Mosqueda=s fifth issue.

E.        Did G & H fail to establish Mosqueda was a
covered employee and it was an employer under the Workers= Compensation Act?








Recovery of workers= compensation benefits is the
exclusive remedy of an employee covered by workers= compensation insurance against an
employer for a work-related injury sustained by the employee.  Tex. Lab. Code Ann. ' 408.001(a) (Vernon 1996). Here, the parties
stipulated that G & H was a subscriber to a policy of worker=s compensation
insurance.  However, under her sixth issue, Mosqueda contends the stipulation
does not fulfill G & H=s purported obligation to prove her claim
for worker=s compensation benefits was covered by a policy of
worker=s compensation
insurance.  She cites Univ. of Houston-Clear Lake v. Marsh, 981 S.W.2d
912, 914 (Tex. App.CHouston [1st Dist.] 1998, no pet.) in
support of this position.  However, this case is distinguishable.  Marsh, a
university employee, sued the university for negligence, following an injury he
sustained while fueling a patrol car.  The university claimed the exclusive
remedy defense; however, it did not present evidence that it had a policy of
worker=s compensation
insurance.  Moreover, there was no stipulation, and the court of appeals did
not have a record.  The university unsuccessfully argued that it was entitled
to the exclusive remedy defense because it was self-insured for worker=s compensation
coverage by statute.  The holding in Marsh does not support Mosqueda=s argument.  








Mosqueda also
contends the stipulation is insufficient because the parties did not
incorporate language identifying G & H as an Aemployer@ under section
401.011(18) of the Labor Code and appellant as a covered Aemployee@ under section
408.001 of the Labor Code.  See  Tex. Lab. Code Ann. '' 408.001, 408.011(18) (Vernon Supp. 2003). 
Mosqueda=s semantical
argument is not sustainable.  See Rodriguez v. Martin Landscape Management,
Inc., 882 S.W.2d 602, 605 (Tex. App.CHouston [1st
Dist.] 1994, no writ).   Practitioners
of employer relations and worker=s compensation law have been using
the word Asubscriber@ as a short-hand rendition of Ahas a policy of worker=s compensation insurance@ for many years.  Moreover, in some
instances, the definitions of Aemployer@ and Aemployee@ and the exclusive remedy provision may apply to more than
one employer of an employee.[6]  Wingfoot,
111 S.W.3d at 144.  Thus, an employee of a temporary employment agency who is
injured while working under the direct supervision of a client company is the
employee of both and can pursue workers= compensation benefits from either
(and be subject to the exclusive remedy provision as to both) if each provided
coverage.  Garza v. Exel Logistics, Inc., 161 S.W.3d 473, 475 (Tex.
2005).  A fortiori, Mosqueda=s arguments regarding statutory
definitions for Aemployees@ and Aemployers@ are unavailing. 
An employer who pleads and proves subscriber status is immune from
liability for common-law negligence and the employee=s exclusive remedy
is under the act.  Puga v. Donna Fruit Co., Inc., 634 S.W.2d 677, 680
(Tex. 1982). The
stipulation removed any factual dispute that G & H had a policy of worker=s compensation effective on Mosqueda=s date of injury.  G & H is
entitled to assert the exclusive remedy defense.  See Western Steel Co. v.
Altenburg, 206 S.W.3d121, 122-23 (Tex. 2006).  Accordingly, we overrule Mosqueda=s sixth issue.

For the foregoing reasons, G & H
conclusively proved it is entitled to the JNOV based on its exclusive remedy
defense under the Worker=s Compensation Act.  The trial court correctly granted  G
& H=s motion for JNOV.  Accordingly, we
affirm the trial court=s JNOV.

F.        Did
the trial court err in granting the Kash defendants= motion for summary judgment?

In Mosqueda=s seventh issue, she argues that the
trial court erred in granting the Kash defendants= motion for summary judgment because
the Kash defendants failed to meet their burden to address all claims expressed
in Mosqueda=s pleadings, and because she raised a genuine issue of material fact.  

Edward Kash is the president of G
& H, and receives a regular paycheck as an employee of the company.  Kash
formed Kash Holdings and KFP for estate planning purposes.  Kash Holdings and
KFP have no employees or operations.  KFP owns the land and the building that
houses G & H.  G & H owns all of the equipment and leases the building
from KFP.  

Failure to Address All Claims








In an attempt to assign liability to
the Kash defendants jointly and severally, Mosqueda included the following
claims in her pleadings: negligent activity, products liability, gross
negligence, breach of contract, single business enterprise, and alter ego
against the Kash defendants.  In their traditional motion for summary judgment,
which the trial court granted, the Kash defendants addressed joint enterprise,
alter ego, and single business enterprise.  Mosqueda contends the negligence,
products liability, gross negligence, and breach-of-contract issues must be
remanded to the trial court because the Kash defendants did not address those
theories in their motion. 

A party=s omission of one or more of her
claims from a motion for summary judgment does not constitute waiver because a
party is entitled to move for partial summary judgment.  McNally v. Guevera,
52 S.W.3d 195, 195 (Tex. 2001).  If the trial court does not dispose of all
issues in an interlocutory summary judgment, the undisposed issues remain to be
tried to a factfinder.  See Chase Manhattan Bank, N.A. v. Lindsay, 787
S.W.2d 51, 53 (Tex. 1990).  Therefore, any claims on which summary judgment was
not granted and for which all grounds were not conclusively established at
trial must be submitted to the jury to avoid waiver.  Tex. R. Civ. P. 279; Southwestern Bell Tel. Co. v.
DeLanney, 809 S.W.2d 493, 495 (Tex. 1991).  Mosqueda did not request that
the trial court submit issues to the jury on negligence, gross negligence,
products liability, or breach of contract with regard to the Kash defendants,
nor did Mosqueda object to the omission of such issues.  Mosqueda does not
contend that those claims were conclusively established.  Therefore, Mosqueda
waived any recovery from the Kash defendants based on negligence, gross
negligence, products liability, or breach of contract.  Tex. R. Civ. P. 279 (AUpon appeal all independent grounds
of recovery or of defense not conclusively established under the evidence and
no element of which is submitted or requested are waived.@). 

Equitable Doctrines








The only remaining issues to be
considered with regard to the Kash defendants= motion for summary judgment are
joint enterprise, single business enterprise, and alter ego.  The equitable
doctrines asserted by Mosqueda are distinct equitable theories, but have
similar purposes.  The alter ego doctrine is applied to disregard the corporate
fiction when there is such unity between a corporation and its subsidiary that
the separateness of the latter has ceased and holding only the subsidiary
liable would lead to injustice.  North American Van Lines v. Emmons, 50
S.W.3d 103, 119 (Tex. App.CBeaumont 2001, pet. denied).  Under the single business
enterprise doctrine, when corporations are not operated as separate entities,
each constituent corporation may be liable for the debts incurred in pursuit of
that business purpose.  Old Republic Ins. Co. v. Ex-Im Servs. Corp., 920
S.W.2d 393, 395B96 (Tex. App.CHouston [1st Dist.] 1996, no writ).  Under the joint
enterprise theory, courts impute liability to one who was not an active
wrongdoer but who is so closely connected to the wrongdoer to warrant the
imposition of vicarious liability.  See St. Joseph Hosp. v. Wolff,
94 S.W.3d 513, 517, 526 (Tex. 2002) (plurality op.); Shoemaker v. Estate of
Whistler, 513 S.W.2d 10, 13 (Tex. 1974).  Each of these theories is a
method to disregard the corporate fiction and impose liability where none would
otherwise exist.  Equinox Enters., Inc. v. Associated Media Inc., 730
S.W.2d 872, 877 (Tex. App.CDallas 1987, no writ). 

In this case, G & H is entitled
to the exclusive remedy defense.  Because Mosqueda was the borrowed employee of
G & H, she cannot maintain her common law claims against G & H. 
Therefore, even if we concluded that the summary judgment should not have been
granted, there is no basis for recovery against the Kash defendants.  See
Aluminum Chemicals (Bolivia), Inc. v. Bechtel Corp., 28 S.W.3d 64, 68 (Tex.
App.CTexarkana 2000, no pet.) (stating
that, if there is no finding of liability against subsidiary, plaintiff cannot
recover against the parent under single business enterprise, joint enterprise,
or alter ego theories).  Because there can be no derivative recovery against
the Kash defendants, and Mosqueda failed to obtain favorable jury findings
directly against the Kash defendants, we overrule Mosqueda=s seventh issue.








Having
overruled all of Mosqueda=s issues, we affirm the trial court=s judgment.

 

 

 

/s/        Charles Seymore

Justice

 

 

Judgment rendered and
Majority, Concurring, and Dissenting Opinions filed January 31, 2007.

Panel consists of Justices Edelman,
Frost, and Seymore. (Seymore, J., concurring) (Edelman, J., dissenting).

 

 









[1]           This two-step Aas a matter of law@
analysis has been criticized by some courts.  See Landon v. S&H
Marketing Group, Inc., 82 S.W.3d 666, 674 n.4 (Tex. App.CEastland 2002, no pet.); Montes v. Tex. Emp. Is.
Ass=n, 779
S.W.2d 485, 487 (Tex. App.CEl Paso 1989,
no writ).  This court will follow the two-step analysis until the Supreme Court
of Texas disavows it.  





[2]           Another time ticket with the same AConditions of Service@ language was offered into evidence by Mosqueda=s counsel.





[3]           It should be noted that, in this argument,
Mosqueda asserts only that G & H=s
alleged breach of paragraph 8 of the contract prevents G & H from enforcing
the contract.  Mosqueda does not assert that section 8 creates an ambiguity or
fact issue that the jury could have properly resolved.





[4]           The dissent, seizing upon Mosqueda=s unavailing breach-of-contract
argument, suggests that, Aeven if the Conditions of Service
did apply, providing that G & H had general authority to direct the work to
be done, paragraph 8 also applied, supporting at least a reasonable inference,
which we must indulge, that G&H had no right to assign Mosqueda to perform
any work that could expose her to any unreasonably dangerous working conditions.@  Because there was no objection to
this portion of the charge, the dissent erroneously concludes: Athe evidence presented at trial
authorized the jury  to render a verdict that Mosqueda was not a borrowed
employee.@  The dissent fails to acknowledge
the trial court did not determine that the subject contract language is
ambiguous.  The trial court could have submitted a jury question regarding
intent of parties under that circumstance.  Our colleague=s proposed disposition would not
authorize the jury to determine intent of the parties to the agreement which
would be their proper role; the dissent implicitly opines that the jury is
allowed to interpret and apply contract language, a duty assigned
solely to the court.  Texaco, Inc. v. Pennzoil Co., 729 S.W.2d 768, 814
(Tex. App.CHouston [1st Dist.] 1987, writ ref=d n.r.e.).  See also Faust v.
Pumpco, Inc., 57 S.W.3d 620, 624, 625 (Tex. App.CTexarkana 2001 pet. denied). Moreover, the suggestion that paragraph 8 supports a
reasonable inference upon which the jury may determine an issue of fact is
misguided.   See Universal Health Servs., Inc. v. Renaissance Women's Group,
P.A., 121 S.W.3d 742, 746 (Tex.2003) (stating that, if a contract is
unambiguous, the court should interpret it as a matter of law and enforce it as
written because there is no fact issue regarding the intent of the parties for
the jury to consider).

 





[5]           Mosqueda asserts that St. Joseph Hosp.
v. Wolff resolves this issue; however, she cites a statement in a footnote
that is unnecessary to the plurality=s
recommended holding in that case.  See 94 S.W.3d 513, 544 n. 92 (Tex.
2003) (Moseley, J., plurality op.).  This footnote does not resolve the issue. 





[6]           An employer, unless otherwise specified, is
a person who makes a contract of hire, employs one or more employees, and has
workers= compensation insurance coverage.  Tex. Lab. Code Ann. ' 401.011(18) (Vernon Supp. 2004-2005).  An employee is
any person in the service of another under a contract of hire, whether express
or implied, or oral or written.  Id. '
401.012(a).